[Cite as *State v. Lindsay*, 2011-Ohio-4747.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. Julie A. Edwards, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2010-CA-0134 |
| WENDELL R. LINDSAY, II. | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the Richland County
                             Court of Common Pleas, Case No. 2010-
                             CR-0419D

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      September 19, 2011

APPEARANCES:


For Plaintiff-Appellee                 For Defendant-Appellant

JAMES J. MAYER                         CHARLES M. BROWN
Richland County Prosecutor             76 North Mulberry Street
38 South Park Street                   Mansfield, OH 44902
Mansfield, OH 44902

*Gwin, P.J.*

{¶1}   Defendant-appellant Wendell R. Lindsay, II appeals from his convictions and sentences in the Richland County Court of Common Pleas on one count of raping a minor (R.C. 2907.02(A) (1) (b)), one count of gross sexual imposition (R.C. 2907.05(A) (4)), and one count of sexual battery (R.C. 2907.03(A)(5). Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2}   On March 4, 2010, ten-year-old N.J. approached her guidance counselor at school and told her "my mother's boyfriend has been raping me." (T. 197). During the investigation into the sexual assault, N.J. disclosed that her mother's boyfriend, appellant, had come into the room that she shared with her younger sister on the morning of March 4th, pulled down her underwear and stuck his tongue in her vagina. (T. at 198; 269). This was not the first time a sexual incident had occurred. All in all, N.J. told the social worker who interviewed her that the appellant had placed his mouth on her vagina approximately six times and penetrated her vagina with his penis a total of seven times. (T. at 271).

{¶3}   After the disclosures, N.J.'s father took her to the hospital for a sexual assault examination. The nurse who performed the exam found physical evidence consistent with N.J.'s allegations. As part of the examination, swabs were taken of the victim's vaginal area and the panties she was wearing at the time of the examination were collected. DNA collected from the panties and the vaginal area of N.J. was consistent with the appellant's DNA.

{¶4} Appellant was indicted by the Richland County Grand Jury with 5 separate counts of rape, 5 separate counts of sexual battery, and 5 separate counts of gross sexual imposition.

{¶5} Following the jury trial, appellant was convicted of one count of rape, one count of sexual battery and one count of gross sexual imposition. The jury returned verdicts of not guilty to the remaining charges.

{¶6} A sentencing hearing was held on October 27, 2010. The trial court merged the offenses for sentencing purposes and sentenced appellant to a term of ten years to life.

{¶7} Appellant timely appeals, setting forth the following assignments of error[1]:

{¶8} "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DEPRIVED THE DEFENDANT-APPELLANT OF HIS EQUAL PROTECTION RIGHTS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION BY UPHOLDING THE PEREMPTORY CHALLENGES OF THE PROSECUTOR AGAINST TWO BLACK JURORS.

{¶9} "II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DEPRIVED THE DEFENDANT-APPELLANT UNDER HIS DUE PROCESS RIGHTS UNDER 1 HE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND HIS SIXTH AMENDMENT RIGHTS OF THE UNITED STATES CONSTITUTION BY DENYING DEFENDANT-APPELLANT TO CHANGE COUNSEL

---

[1] We note that Mr. Lindsay filed a pro se "Amendment to Defendant-Appellant's Appeal Brief on June 13, 2011. He did not request and was not granted leave to file a pro se brief. This brief was filed after the State had filed its brief. Appellant's pro se brief does not show a proper Proof of Service as mandated by App. R. 13. Accordingly, the State had no opportunity to reply to appellant's pro se brief. Additionally, Ohio law prohibits a defendant and his appointed counsel from acting as "co-counsel" See, *State v. Martin*, 103 Ohio St.3d 385, 816 N.E.2d 227, 2004-Ohio-5471. Accordingly, we will not address appellant's pro se arguments in the disposition of this appeal.

DURING THE TRIAL AND TO HAVE THE JUDGE RECUSE HIMSELF IN VIOLATION OF THE DEFENDANT-APPELLANT'S SIXTH AMENDMENT RIGHT TO COUNSEL AND THE FOURTEENTH AMENDMENT DUE PROCESS.

**{¶10}** "III. THE TRIAL COURT ERRED IN FAILURE TO CONTINUE THE TRIAL BASED UPON THE REQUEST OF THE DEFENDANT-APPELLANT'S ATTORNEY.

**{¶11}** "IV. THE DEFENDANT-APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS UNDER THE UNITED STATES CONSTITUTION AND OHIO CONSTITUTION BY RECEIVING INTO EVIDENCE REGARDING DOMESTIC VIOLENCE AND ADULTERY REPORTEDLY COMMITTED BY THE DEFENDANT-APPELLANT.

**{¶12}** "V. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO EXCLUDE OUT-OF-COURT STATEMENTS MADE BY THE ALLEGED VICTIM BEING INTRODUCED THROUGH THE TESTIMONY OF OTHER WITNESSES, IN VIOLATION OF EVIDENCE RULE 802 AND THE DEFENDANT-APPELLANT'S RIGHT IS GUARANTEED TO HIM BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

**{¶13}** "VI. DEFENDANT-APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, AS WELL AS THE DUE PROCESS PROTECTION UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."

I.

{¶14} During voir dire, appellant raised two Batson objections regarding the State's use of peremptory challenges against two African-American jurors. In his First Assignment of Error appellant argues that the State failed to provide race-neutral reasons for the challenges.

{¶15} A defendant is denied equal protection of the law guaranteed to him by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution when the state places the defendant on trial before a jury from which members of the defendant's race have been purposely excluded. *Strauder v. W. Virginia* (1880), 100 U.S. 303, 305; *State v. Hernandez* (1992), 63 Ohio St. 3d 577; *State v. Bryant* (1995), 104 Ohio App. 3d 512, 516. The "equal protection clause forbids a prosecutor from challenging potential jurors solely on account of their race or on the assumption that jurors of the same race as the defendant will be unable to impartially consider the state's case against the defendant." *State v. Bryant*, supra, 104 Ohio App. 3d 516; *Batson v. Kentucky* (1986), 476 U.S. 79, 89, 106 S.Ct. 1712.

{¶16} Whenever a party opposes a peremptory challenge by claiming racial discrimination "[a] judge should make clear, on the record, that he or she understands and has applied the precise *Batson* test when racial discrimination has been alleged in opposition to a peremptory challenge." *Hicks v. Westinghouse Materials Co.*, 78 Ohio St.3d 95, 99, 676 N.E.2d 872, 1997-Ohio-227.

{¶17} In *Hicks*, supra, the Ohio Supreme Court set forth the *Batson* test as follows:

**{¶18}** "The United States Supreme Court set forth in *Batson* the test to be used in determining whether a peremptory strike is racially motivated. First, a party opposing a peremptory challenge must demonstrate a prima-facie case of racial discrimination in the use of the strike. Id. at 96, 106 S. Ct. at 1723, 90 L. Ed. 2d at 87. To establish a prima-facie case, a litigant must show he or she is a member of a cognizable racial group and that the peremptory challenge will remove a member of the litigant's race from the venire. The peremptory-challenge opponent is entitled to rely on the fact that the strike is an inherently 'discriminating' device, permitting 'those to discriminate who are of a mind to discriminate'. *State v. Hernandez* (1992), 63 Ohio St. 3d 577, 582, 589 N.E. 2d 1310, 1313, certiorari denied (1992), 506 U.S. 898, 113 S. Ct. 279, 121 L. Ed. 2d 206. The litigant must then show an inference of racial discrimination by the striking party. The trial court should consider all relevant circumstances in determining whether a prima-facie case exists, including all statements by counsel exercising the peremptory challenge, counsel's questions during voir dire, and whether a pattern of strikes against minority venire members is present. See, *Batson* at 96-97, 106 S. Ct. at 1723, 90 L. Ed. 2d at 88. Assuming a prima-facie case exists, the striking party must then articulate a race-neutral explanation 'related to the particular case to be tried.' Id at 95, 106 S. Ct. at 1724, 90 L.Ed. 2d at 88. A simple affirmation of general good faith will not suffice. However, the explanation 'need not rise to the level justifying exercise of a challenge for cause.' Id. at 97, 106 S. Ct. at 723, 90 L. Ed. 2d at 88. The critical issue is whether a discriminatory intent is inherent in counsel's explanation for use of the strike; intent is present if the explanation is merely pretext for exclusion on the basis of race. *Hernandez v. New York* (1991), 500 U.S. 352, 363, 111 S. Ct. 1859, 1868, 114 L. Ed.

2d 395, 409. 78 Ohio St. 3d. 98-9. See also, *State v. Bulin*, Stark App. No. 2008-CA-00045, 2008-Ohio-5691.

**{¶19}** Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive or even plausible"; so long as the reason is not inherently discriminatory, it suffices. *Purkett v. Elem* (1995)*,* 514 U.S. 765, 767-768, 115 S.Ct. 1769. *(per curiam); Rice v. Collins* (2006), 546 U.S. 333, 126 S.Ct. 969, 973-74.

**{¶20}** Lastly the trial court must determine whether the party opposing the peremptory strike has proved purposeful discrimination. *Purkett v. Elem* (1995), 514 U.S. 765, 766-767, 115 S. Ct. 1769, 1770. It is at this stage that the persuasiveness, and credibility, of the justification offered by the striking party becomes relevant. Id. at 768, 115 S. Ct. at 1771. The critical question, which the trial judge must resolve, is whether counsel's race-neutral explanation should be believed. *Hernandez v. New York,* 500 U.S. at 365, 111 S. Ct. at 1869; *State v. Nash* (August 14, 1995), Stark County Court of Appeals, Case No. 1995 CA 00024. This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett,* supra*,* at 768, 115 S.Ct. 1769; *Rice v. Collins*, supra at 126 S.Ct. 974.

**{¶21}** It is irrelevant how many minority jurors remain on the panel if even one is excluded on the basis of race. *State v. Bryant*, supra, 104 Ohio App. 3d 512; *State v. Tuck* 80 Ohio App 3d 721, 724 (*Batson*, applicable even if there is only one African-

American juror on the panel); *Jones v. Ryan* (C.A. 3, 1993), 987 F. 2d 960, 972; *United States v. David* (C.A. 11, 1986), 803 F. 2d 1567.

**{¶22}** On direct appeal in federal court, the credibility findings a trial court makes in a *Batson* inquiry are reviewed for clear error. *Hernandez v. New York,* 500 U.S. 352, 364-366, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion) (holding that evaluation of a prosecutor's credibility "lies 'peculiarly within a trial judge's province' "). *Rice v. Collins*, supra at 126 S.Ct. 974; *State v. Bulin, supra.*

**{¶23}** In the case at bar, appellant's trial counsel stated he was making a Batson objection concerning Juror Tate and Juror Beard; he did not offer any further explanation to make his prima facie case as required in the first step of *Batson.* He did not refer to any statements made by the prosecutor that would indicate that the challenge was discriminatory, did not point to a pattern of discrimination and did not point to specific questions in voir dire that would indicate a discriminatory motive.

**{¶24}** Moreover, even though the appellant had not met his prima facie burden to go forward on the challenge the prosecutor voluntarily explained his reasons for the peremptory strike. *Hicks v. Westinghouse,* supra, 78 Ohio St. 3d at 100, 676 N.E. 2d 872; *State v. Hernandez,* supra, 63 Ohio St.3d at 583, 589 N.E.2d 1310; *Hernandez v. New York,* supra; *State v. Nash,* supra.

**{¶25}** With respect to Juror Tate the prosecutor stated:

**{¶26}** "Judge, she has a criminal history. She failed to disclose that criminal history on the questionnaire despite the admonition on the questionnaire, not being honest, she could be held in contempt. She answered yes to having a boyfriend in jail,

she went down and put money on the books. All of those factors make me think she's not a good juror for the State." (1T. at 124).

{¶27} With respect to Juror Beard, the prosecutor stated:

{¶28} "Same reason, Judge, on his questionnaire he indicated that no, he did not have family members as a defendant, and despite the admonition to be honest, turns out his son is in the County jail, and he says his son has been a frequent offender, and he can't explain why he answered in the negative to that question. All of those lead me to the conclusion that he's either not attentive or is being deceptive. Either way it's not a jury the State wishes to have." (1T. at 125).

{¶29} "The trial judge is best placed to consider the factors that underlie credibility: demeanor, context, and atmosphere. And the trial judge is best placed to determine whether, in a borderline case, a prosecutor's hesitation or contradiction reflect (a) deception, or (b) the difficulty of providing a rational reason for an instinctive decision. Appellate judges cannot on the basis of a cold record easily second-guess a trial judge's decision about likely motivation. These circumstances mean that appellate courts will, and must, grant the trial courts considerable leeway in applying *Batson*." *Rice v. Collins,* supra at 126 S.Ct. at 977. (Breyer, J., concurring).

{¶30} Appellant offered no factually specific argument to the trial court or in his brief to this Court to prove that the peremptory strikes were purposefully discriminatory. *Purkett v. Elem* (1995), 514 U.S. 765, 766-767, 115 S.Ct. 1769, 1770. We do not find that the dismissal of Juror Tate and Beard was clearly erroneous. We find that the reason provided by the prosecutor prior to exercising a peremptory challenge to excuse Juror Tate and Juror Beard was racially neutral.

**{¶31}** Appellant's First Assignment of Error is overruled.

II.

**{¶32}** In his Second Assignment of Error appellant contends that the trial court abused its discretion by overruling his request for new counsel. Further, appellant contends the trial judge erred by failing to recuse himself from appellant's case. We disagree with both of appellant's arguments.

A. Motion to Discharge Counsel.

**{¶33}** Several times throughout the trial, appellant attempted to request new trial counsel. Appellant insisted that trial counsel was ineffective and that he was not happy with his representation. Appellant denied that he had seen any of the evidence except for the forensics and had never seen the witness lists. (T. at 274). Appellant further objected to the defense that was presented, "I think there is not an affirmative defense here. I don't have a defense. I don't have a leg to stand on here. I mean, I have three witnesses that I attempted - not witnesses, but people that I would like to call to the stand." (T. at 528). Appellant claims that his attorney failed to call his witnesses for him. (Id). The three witnesses that appellant wanted to call were Khianti James, Pat Smith and Dan Myers, his probation officer. (T. at 573). Finally, appellant objected to counsel's alleged failure to subpoena his phone records to substantiate some of the claims he argued during cross examination. (T. at 570).

**{¶34}** The right to competent counsel does not require that a criminal defendant develop and share a "meaningful relationship" with his attorney. *Morris v. Slappy* (1983), 461 U.S. 1, 13, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610; *State v. Blankenship*

(1995), 102 Ohio App.3d 534, 657 N.E.2d 559; *State v. Burroughs*, 5th Dist. No. 04CAC03018, 2004-Ohio-4769 at ¶ 11.

{¶35} In the context of reviewing a claim by the defendant that the trial court abused its discretion by overruling the defendant's request to discharge court appointed counsel and to substitute new counsel for the defendant the courts have taken the approach that the defendant must show a complete breakdown in communication in order to warrant a reversal of the trial court's decision. In *State v. Cowans* (1999), 87 Ohio St.3d 68, 1999-Ohio-250, 717 N.E.2d 298 the Court noted: "[e]ven if counsel had explored plea options based on a belief that Cowans might be guilty, counsel's belief in their client's guilt is not good cause for substitution. '"A lawyer has a duty to give the accused an honest appraisal of his case. * * * Counsel has a duty to be candid; he has no duty to be optimistic when the facts do not warrant optimism.' " *Brown v. United States* (C.A.D.C.1959), 264 F.2d 363, 369 (*en banc*), quoted in *McKee v. Harris* (C.A.2, 1981), 649 F.2d 927, 932. "'If the rule were otherwise, appointed counsel could be replaced for doing little more than giving their clients honest advice.' " *McKee*, 649 F.2d at 932, quoting *McKee v. Harris* (S.D.N.Y.1980), 485 F.Supp. 866, 869." Id. at 73, 717 N.E.2d at 304-305.

{¶36} In a similar vein it has been held that hostility, tension, or personal conflicts between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify a change in appointed counsel. See *State v. Henness* (1997), 79 Ohio St.3d 53, 65-66, 679 N.E.2d 686. Furthermore, "[m]erely because appointed counsel's trial tactics or approach may vary from that which appellant views as prudent is not sufficient to warrant the substitution of

counsel." *State v. Glasure* (1999), 132 Ohio App.3d 227, 239, 724 N.E.2d 1165; *State v. Evans*(2003), 153 Ohio App.3d 226, 235-36, 2003-Ohio-3475 at ¶31, 792 N.E.2d 757,764; *State v. Newland*, 4th Dist. No. 02CA2666, 2003-Ohio-3230 at ¶11.

**{¶37}** A defendant has no constitutional right to determine trial tactics and strategy of counsel. *State v. Cowans* (1999), 87 Ohio St.3d 68, 72, 717 N.E.2d 298; *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 150; *State v. Donkers,* 170 Ohio App.3d 509, 867 N.E.2d 903, 2007-Ohio-1557 at ¶ 183. Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant. Id . When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 402 N.E.2d 1189, citing *People v. Miller* (1972), 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089; *State v. Wiley*, 10th Dist. No. 03AP-340, 2004-Ohio-1008 at ¶ 21.

**{¶38}** Appellant has not established that such a breakdown occurred. Indeed, our review of the record indicates appellant's counsel was thoroughly prepared. Appellant's counsel indicated that he and appellant had reviewed several motions that were prepared by appellant. They discussed the content of the motions and trial counsel discussed the issues with him and expressed the belief that the motions did not have merit. (T. at 142). In this regard we find useful cases in which a defendant has alleged that he received ineffective assistance of counsel during trial.[2]

**{¶39}** The Ohio Supreme Court has recognized that if counsel, for strategic reasons, decides not to pursue every possible trial strategy, defendant is not denied

---

[2] Appellant has raised ineffective assistance of counsel as Assignment of Error VI, infra.

effective assistance of counsel. *State v. Brown* (1988), 38 Ohio St.3d 305, 319, 528 N.E.2d 523. When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 402 N.E.2d 1189, citing *People v. Miller* (1972), 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089; *State v. Wiley,* 10th Dist. No. 03AP-340, 2004-Ohio-1008 at ¶ 21. "Debatable trial tactics do not establish ineffective assistance of counsel." *State v. Hoffner* (2004), 102 Ohio St.3d 358, 365, 2004-Ohio-3430, ¶ 45.

**{¶40}** Counsel's decision not to subpoena appellant's cellular phone records may have been such a decision. The jury heard both sides of the argument during trial; they chose to believe the state's witnesses rather than appellant. There is nothing in the record to show the jury would have found the appellant not guilty had the phone records been introduced during trial. *State v. Benge,* 75 Ohio St.3d 136, 141, 1996-Ohio-227.

**{¶41}** Further, appellant was not prevented from presenting witnesses. Khianti James and Patrice Smith both testified at trial and the court offered appellant the chance to call Dan Myers if he wanted to, however, the appellant declined. (T. at 595). Appellant did not proffer what evidence he believes Mr. Myers would have presented that would aid in his defense, if he were called.

**{¶42}** Appellant was aware that the victim's grandmother, Charlene Thomas, was on the witness list and that she had once been a bailiff to the trial court. (T. at 143). Appellant used this information to make the argument for a change of venue. Appellant's counsel admitted that appellant was aware that the victim's grandmother was a witness in this case. (T. at 394-395).

**{¶43}** Appellant has failed to establish a breakdown in attorney-client relationship of such magnitude as to jeopardize defendant's right to effective assistance of counsel. *State v. Coleman* (1988), 37 Ohio St.3d 286, 292, 525 N.E.2d 782, 798-99.

**{¶44}** B. Recusal.

**{¶45}** Appellant further objected to Judge DeWeese presiding over the trial and requested that he recuse himself. Appellant's stated reason for the objection was that the victim's grandmother was a retired bailiff from Judge DeWeese's court

**{¶46}** R.C. 2701.03 which is cited by appellee governs the disqualification of a judge of the court of common pleas. R.C. 2701.03 allows a party to file an affidavit of disqualification with the Ohio Supreme Court when a common pleas court judge is allegedly biased against a party or counsel.   The filing of the affidavit of disqualification precludes the trial judge from conducting any further proceedings until the Chief Justice rules on the affidavit.  R.C. 2701.03(D)(1)

**{¶47}** R.C. 2701.03 provides the exclusive means for determining whether a trial judge is biased, prejudiced, or is otherwise disqualified from presiding over a case. *Jones v. Billingham* (1995), 105 Ohio App. 3d 8, 11; See also, *State v. Demastry,* 155 Ohio App.3d 110, 799 N.E.2d 229, 2003-Ohio-5588 at ¶79; *State v. Gainer*, Tuscarawas App. No. 2002AP10092, 2003-Ohio-5020 at ¶14. Disqualification proceedings are not initiated in the court of appeals and are not subject to review by the court of appeals. *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 440, 377 N.E.2d 775.

**{¶48}** Appellant did not utilize the procedure for disqualification mandated by R.C. 2701.03. Appellant's claim is not properly before this court and is not demonstrated by the record. *State v. Brack*, Stark App.No. 2010CA00061, 2011-Ohio-2949 at ¶75.

**{¶49}** For the foregoing reasons, appellant's Second Assignment of Error is overruled in its entirety.

III.

**{¶50}** Appellant argues in his Third Assignment of Error that the trial court violated his Due Process rights by not allowing a continuance of the trial after the State provided a Bill of Particulars two days before the trial. Appellant claims that the Bill of Particulars included new information, in the form of two new addresses where offenses were alleged to have occurred and differing offense dates, and as such, appellant was prejudiced in preparing for trial.

**{¶51}** In making the motion, appellant's counsel stated that he was aware "that these incidents occurred at 425 Beryl Avenue." (1T. at 5-6). Counsel stated that he thought all the incidents occurred at the Beryl Avenue address. (Id. at 8). Counsel's objection centered upon two other addresses disclosed in the Bill of Particulars. (Id. at 7). Appellant's counsel admitted that the time frame was included in the original indictment. (Id. at 7-8). The time frame was the same in the Bill of Particulars.

**{¶52}** In the case at bar, appellant was convicted on Counts Five, Ten and Fifteen of the Indictment. The jury found appellant not guilty of Counts One through Four and Counts Eleven through Fourteen. The Counts upon which the jury found appellant guilty were all alleged in the original indictment to have occurred at the 425 Beryl Avenue address.

**{¶53}** We must be mindful of the " * * * elementary proposition of law that an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him." See *Smith v.*

*Flesher* ( 1967), 12 Ohio St. 2d 107, 233 N.E. 2d 137; *State v. Stanton* (1968), 15 Ohio St.2d 215, 217, 239 N.E.2d 92,94; *Wachovia Mtg. Corp. v. Aleshire*, Licking App. No. 09 CA 4, 2009-Ohio-5097 at ¶16. See, also, App.R. 12(D).

**{¶54}** There is no showing in the record that the trial court erred by denying the continuance because appellant was found not guilty of the offenses that were alleged to have occurred at addresses other the Beryl Avenue address.

**{¶55}** Appellant's Third Assignment of Error is overruled.

IV.

**{¶56}** In his Fourth Assignment of Error appellant contends that his due process rights were violated because the court allowed testimony to be presented regarding the abusive and violent relationship between himself and the victim's mother and regarding an affair he was having with another woman.

**{¶57}** Khianti James testified that she and appellant had an abusive relationship. (T. at 219-221). The State proffered that the testimony regarding the violent relationship was relevant in demonstrating to the jury that the victim lived in an environment where the victim did not feel able to tell her mother about the sexual abuse that appellant was subjecting her to. (T. at 220). The court allowed the testimony as long as it was close in time frame to the alleged abuse; otherwise the evidence would be excluded as irrelevant. Id*.* Ms. James also testified that she did not believe that appellant had been faithful to her throughout their relationship. (T. at 229).

**{¶58}** Detective Jeff Shook testified and was asked concerning the appellant's record. (T. at 364- 365). Appellant's objection was overruled. (Id. at 365). Thereafter, Detective Shook testified,

**{¶59}** "Q. What did your research consist of?

**{¶60}** "A. Looking at our records data base seeing if there was any reported domestic assault situations that involved Mr. Lindsay and Ms. James.

**{¶61}** "Q.     Did you find any?"

**{¶62}** "* * *

**{¶63}** "A.     Yes, I found numerous."

**{¶64}** Patrice Smith, Richland County Sheriff's Deputy, testified that she is Khianti James' sister. She testified that she responded to a call on Needham Road regarding a domestic situation. The gist of that call was that appellant was alleged to have been involved with a married woman, and the husband had come home, found them together and an argument had ensued. This incident occurred in December 2009. Ms. Smith was asked by the prosecutor:

**{¶65}** ""Q. Well, and her boyfriend is out catting around with some married woman, that's something you could tell your sister about?"

**{¶66}** "A. Absolutely. Yes, sir." (T. at 323).

**{¶67}** Initially, we note that the decision to admit or exclude relevant evidence is within the sound discretion of the trial court. *State v. Bey* (1999), 85 Ohio St.3d 487, 490, 709 N.E.2d 484, 490. The trial court's decision to admit or exclude relevant evidence cannot be reversed absent an abuse of that discretion. See, e.g., *State v. Combs* (1991), 62 Ohio St.3d 278, 581 N.E.2d 1071; *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343; *State v. Rooker* (Apr. 15, 1993), Pike App. No. 483, unreported. The term "abuse of discretion" implies more than an error of law or judgment. Rather, the term suggests that the trial court acted in an unreasonable,

arbitrary, or unconscionable manner. See, e.g., *State v. Xie* (1992), 62 Ohio St.3d 521, 584 N.E.2d 715; *State v. Montgomery* (1991), 61 Ohio St.3d 410, 575 N.E.2d 167. Furthermore, when applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *In re: Jane Doe* 1 (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181 (citing *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 359 N.E .2d 1301).

**{¶68}** Evid.R. 404 sets forth a general bar against the use of character evidence. Of importance to the case *sub judice,* Evid.R. 404(B) provides as follows:

**{¶69}** "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence or mistake or accident."

**{¶70}** The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. See *State v. Curry* (1975), 43 Ohio St.2d 66, 68, 72 O.O.2d 37, 38, 330 N.E.2d 720, 723.

**{¶71}** "Rule 404(b) only bars evidence of 'prior bad acts,' such as a criminal conviction, that are offered to show criminal disposition or propensity. If the evidence has an independent purpose, its admission is not prohibited by Rule 404(b)." See *United State v. Ushery* (6th Cir.1992), 968 F.2d 575, 580.

**{¶72}** Under Evid.R. 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

**{¶73}** In the case at bar, there was no specific showing that the victim in this case was present or aware of any of the previous instances of alleged domestic violence. (T. at 221). No explanation is given as to how appellant's alleged affair with a married woman has any relevance to the ten year old victim's allegations of sexual abuse.

**{¶74}** The record in the case at bar makes clear that the testimony concerning domestic violence and affairs was inadmissible character evidence under Evid. R. 404. That being said, we find while the testimony concerning domestic violence and appellant's alleged affairs was inadmissible, there was no prejudice to the appellant.

**{¶75}** In making a Crim.R. 52(A) harmless error analysis, any error will be deemed harmless if it did not affect the accused's "substantial rights." Otherwise stated, the accused has a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error. Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *Chapman,* supra, 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 711. Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Lytle* ( 1976), 48 Ohio St. 2d 391, 2 O.O. 3d 495, 358 N.E. 2d 623, paragraph three of the syllabus, vacated on other grounds in (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.

**{¶76}** In the case at bar, the jury was given a limiting instruction. (T. at 603). "A presumption always exists that the jury has followed the instructions given to it by the trial court," *Pang v. Minch* (1990), 53 Ohio St.3d 186, 187, 559 N.E.2d 1313, at paragraph four of the syllabus, rehearing denied, 54 Ohio St.3d 716, 562 N.E.2d 163, approving and following *State v. Fox* (1938), 133 Ohio St. 154, 12 N.E.2d 413; *Browning v. State* (1929), 120 Ohio St. 62, 165 N.E. 566. Further, the jury found appellant not guilty of twelve of the fifteen counts alleged in the Indictment.

**{¶77}** Even though the admission of the prior acts was erroneous, we would conclude, from a review of the entire record, that such error would be 'harmless beyond a reasonable doubt.' *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Harrington v. California* (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; *Schneble v. Florida* (1972), 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340.

**{¶78}** Appellant's Fourth Assignment of Error is overruled.

V.

**{¶79}** In his Fifth Assignment of Error, appellant argues that the trial court erred by permitting witnesses to testify concerning what the victim had disclosed to them. We disagree.

**{¶80}** "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the recognized exceptions. Evid.R. 802; *State v. Steffen* (1987), 31 Ohio St.3d 111, 119, 509 N.E.2d 383.

**{¶81}** "The hearsay rule ... is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine are generally absent for things said out of court." *Williamson v. United States* (1994), 512 U.S. 594, 598, 114 S.Ct. 2431, 2434, 129 L.Ed.2d 476.

**{¶82}** Under Evid.R. 801(D), prior statements by a witness and admissions by a party-opponent are not hearsay even though the statements or admissions are offered for their truth and fall within the basic definition of hearsay. However, Evid.R. 801(D)(1) requires that the declarant testify at trial and be subject to cross-examination concerning the statement. In the case at bar, N.J. testified and was subject to cross-examination during appellant's jury trial.

**{¶83}** In the case at bar, Carol Anderson, Elaine Stewart and Luanne Payne testified as to what the victim disclosed to them as part of their investigation into the allegations. (T. at 197-199; 201; 269-271; 278; 488-489). Further the State, when questioned on the record about the testimony in question indicated that the statements were admissible under Evidence Rule 801(D) (1)(b) as a prior consistent statement to rebut the charge of recent fabrication. (T. at 299-300).

**{¶84}** Pursuant to Evid.R. 801(D)(1)(b), a prior consistent statement of a witness at trial is admissible on *redir*ect examination to rehabilitate that witness if the statement

is offered to rebut an express or implied charge on cross-examination that the witness was fabricating testimony given on direct examination. *State v. Bock* (1984), 16 Ohio App.3d 146, 474 N.E.2d 1228; *State v. Polhamus* (June 18, 1999), Montgomery App. No. 17283. The Rule permits the introduction of the declarant's consistent out-of-court statements to rebut a charge of recent fabrication, improper influence or motive only when those statements were made *before* the charged recent fabrication or improper influence or motive. *Tome v. United States* (1995), 513 U.S. 150, 167, 115 S.Ct. 696, 705, 130 L.Ed.2d 574. *State v. Nichols* (1993), 85 Ohio App.3d 65, 71, 619 N.E.2d 80, 84. (Citations omitted). In addition it must be emphasized that, "[p]rior consistent statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited." *Tome,* supra at 158, 115 S.Ct. at 701. The question to be addressed is whether the out-of-court statements rebutted the alleged motive to falsify testimony or the improper influence, not whether they suggested that the declarant's in-court testimony was true. The Rule speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told. *Tome,* supra at 157-158, 115 S.Ct. at 701. "If the Rule were to permit the introduction of prior statements as substantive evidence to rebut every implicit charge that a witness' in-court testimony results from recent fabrication or improper influence or motive, the whole emphasis of the trial could shift to the out-of-court statements, not the in-court ones." Id. at 165, 115 S.Ct. at 705. See, also *State v. Bleigh,* Delaware App. No. 09-CAA-03-0031, 2010-Ohio-1182 at ¶82.

{¶85} However, even if we were to find that the trial court erred in admitting at trial the statements pursuant to Pursuant to Evid.R. 801(D)(1)(b) as a prior consistent

statement of a witness, we would not find it to be prejudicial error under the facts of this case. Crim.R. 52(A), which governs the criminal appeal of a non-forfeited error, provides that "[a]ny *error* * * * which does not *affect substantial rights* shall be disregarded." (Emphasis added.)

**{¶86}** The test for determining whether the admission of inflammatory or otherwise erroneous evidence is harmless and non-constitutional error requires the reviewing court to look at the whole record, leaving out the disputed evidence, and then to decide whether there is other substantial evidence to support the guilty verdict. *State v. Riffle,* Muskingum App. No.2007-0013, 2007-Ohio-5299 at ¶ 36-37. (Citing *State v. Davis* (1975), 44 Ohio App.2d 335, 347, 338 N.E.2d 793). Error is harmless beyond a reasonable doubt when the remaining evidence constitutes overwhelming proof of the defendant's guilt. *State v. Williams* (1988), 38 Ohio St.3d 346, 349-350, 528 N.E.2d 910.

**{¶87}** An expert cannot give an opinion of the veracity of the statements of a child declarant. *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220. However, there is a difference "between expert testimony that a child witness is telling the truth and evidence which bolsters a child's credibility." *State v. Stowers,* 81 Ohio St.3d 260, 262, 1998-Ohio-0632. Thus, an expert can testify that a child's behavior is consistent with the behavior of other children who had been sexually abused. Id.

**{¶88}** In any event, even if the statements were inadmissible, we note that any error will be deemed harmless if it did not affect the accused's "substantial rights." Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *Chapman,* supra, 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 711. Where there is no reasonable possibility that

unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Lytle* (1976), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623, paragraph three of the syllabus, vacated on other grounds in (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.

**{¶89}** In the case at bar, the testimony in question was largely cumulative of the victim's trial testimony. Further, independent evidence of the alleged crimes was introduced to the jury in the form of DNA evidence taken from the underwear the victim was wearing at the time of the alleged assault. In addition, N.J. herself testified and was subject to cross-examination. "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford v. Washington* (2004), 541 U.S. 36, 59, fn. 9, 124 S.Ct. 1354. In this case the jury found appellant guilty of only three of the fifteen charges included in the Indictment. It does not appear that the jury was unduly swayed by the admission of the statements in question.

**{¶90}** Because we find there is no reasonable possibility that testimony cited as error by appellant contributed to a conviction, any error is harmless. *State v. Kovac,* 150 Ohio App.3d 676, 782 N.E.2d 1185, 2002-Ohio-6784 at ¶ 42; *State v. Morrison,* Summit App. No. 21687, 2004-Ohio-2669 at ¶ 66.

**{¶91}** Appellant's Fifth Assignment of Error is overruled.

VI.

**{¶92}** In his Sixth Assignment of Error, appellant argues that he was denied effective assistance of trial counsel. Specifically, appellant argues in toto, "All of the issues raised with respect to the inefficiency and ineffectiveness of counsel was [sic.]

set forth in the previous Assignments of Error. To the extent that objection was not made by counsel to the evidence referred to herein, failure to object to that testimony was defective performance, falling below the objective standard of reasonable representation." [Appellant's Brief at 27-28]. We disagree.

**{¶93}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

**{¶94}** To prevail on this claim, appellant must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley*. *Knowles v. Mirzayance* (2009), --- U.S. ----, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251.

**{¶95}** To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, at 688. In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." Id., at 688–689. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id., at 689.

**{¶96}** Appellant must further demonstrate that he suffered prejudice from his counsel's performance. See *Strickland*, 466 U. S., at 691 ("An error by counsel, even if

professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

**{¶97}** The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, quoting *Strickland* at 697.

**{¶98}** In the case at bar, appellant argues that his trial counsel was ineffective because on numerous occasions his trial counsel failed to object or renew objections to the errors detailed in the foregoing assignments of error.

**{¶99}** "'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.' " *State v. Fears* (1999), 86 Ohio St.3d 329, 347, 715 N.E.2d 136, quoting *State v. Holloway* (1988), 38 Ohio St.3d 239, 244, 527 N.E.2d 831.

**{¶100}** In light of our discussion of appellant's assignments of error, appellant's claim of ineffective assistance of counsel must fail under the second prong of the *Strickland* test. Even if trial counsel's performance fell below an objective standard of reasonable representation, which we do not decide, we find any error was harmless.

**{¶101}** We acknowledge the standard for harmless error in the admission of inflammatory or otherwise erroneous evidence is different from the standard under an ineffective assistance of counsel analysis. However, for the same reasons advanced in

our discussion of the appellant's five assignments of error supra, we cannot find the result of the trial was unreliable or the proceeding was fundamentally unfair because of the performance of trial counsel. *State v. Boucher* (Dec. 23, 1999), Licking App. No. 99 CA 00045.

{¶102}  Appellant's Sixth Assignment of Error is overruled.

{¶103} For the foregoing reasons, the judgment of the Richland County Court of Common Pleas is affirmed.

By Gwin, P.J., and

Edwards, J., concur;

Farmer, J., concurs

separately

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. JULIE A. EDWARDS

WSG:clw 0808

*Farmer, J., concurs separately*

{¶104} I concur in the majority's analysis contained in Assignment of Error V, but would find that the trial court did not err in permitting the statements as they qualified under Evid.R. 801(D)(1)(b).


_____
HON. SHEILA G. FARMER

[Cite as *State v. Lindsay*, 2011-Ohio-4747.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| WENDELL R. LINDSAY, II. | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2010-CA-0134 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Richland County Court of Common Pleas is affirmed. Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. JULIE A. EDWARDS