[Cite as *State v. Burden*, 2013-Ohio-1628.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                         |   | JUDGES:                        |
|-------------------------|---|--------------------------------|
| STATE OF OHIO           | : | Hon. W. Scott Gwin, P.J.       |
|                         | : | Hon. Sheila G. Farmer, J.      |
| Plaintiff-Appellee      | : | Hon. Patricia A. Delaney, J.   |
|                         | : |                                |
| -vs-                    | : |                                |
|                         | : | Case No. 2012-CA-00074         |
| BERT S. BURDEN          | : |                                |
|                         | : |                                |
| Defendant-Appellant     | : | O P I N I O N                  |


CHARACTER OF PROCEEDING:          Criminal appeal from the Stark County
                                  Court of Common Pleas, Case No.2011-
                                  CR-1447

JUDGMENT:                         Affirmed


DATE OF JUDGMENT ENTRY:           April 22, 2013

APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

JOHN FERRERO                           JACOB WILL
BY: RENEE WATSON                       116 Cleveland Avenue N.W.
110 Central Plaza South, Ste. 510      808 Courtyard Centre
Canton, OH 44702-1413                  Canton, OH 44702

*Gwin, P.J.*

{¶1} Appellant, Burt Burden ["Burden"], appeals from the June 26, 2012 judgment entry of the Stark County Court of Common Pleas convicting him of five counts of gross sexual imposition, three of which were felonies of the third degree and two of which were felonies of the fourth degree. Plaintiff-appellee is the State of Ohio.

*Facts and Procedural History*

{¶2} On October 12, 2011, Burden was indicted on four counts of rape in violation of R.C. 2907.02, felonies of the first degree. Burden was also indicted on six counts of gross sexual imposition in violation of R.C. 2907.05 The following evidence was adduced at trial.

{¶3} J.A. was born in 1980. Her aunt Connie is married to Burden. During the relevant time frame, Connie's son Dustin, his wife Melanie and their two children also lived with Connie and Burden. J.A. often visited her aunt as a child, and when she became a teen, would go visit as well as to babysit Dustin's children.

{¶4} J.A. testifed Burden began inappropriately touching her when she was about 8 years old. Connie and Burden had a large bed and early on, J.A. and her sister S.C. slept in their bed with them. Burden would touch her when they were in his bed. He would also touch her inappropriately when they were on the sofa. On the sofa, he would put a blanket over them, then fondle, and digitally penetrate her vagina. While he assaulted her, he would tell J.A. she was pretty and that she was his favorite.

{¶5} Burden would also enter the bathroom while J.A. was showering to watch her. When no one was around, Burden would expose himself and masturbate in front of J.A.

{¶6} On cross-examination, J.A. stated that no one contacted her in 1999 regarding an investigation about the abuse. J.A. admitted that she told her aunt that she thought the abuse was just a bad dream.

{¶7} S.C. the 29-year-old niece of Burden testified Burden's inappropriate behavior began with him exposing himself to her and masturbating in front of her. She recalls one early incident when Burden, fresh from the shower, came into the living room naked and asked her to dry his back. Later, he began touching her when both were seated on the sofa. He would start by rubbing her back, but then would put his hands in her pants to fondle her and put his fingers in her vagina. She would often wake up to Burden in her bed, touching both the outside and inside of her vagina. Sometimes he was clothed and sometimes not. Each time Burden victimized S.C. he would say the same thing: "You know I love you and I would never do anything to hurt you, right?"

{¶8} S.C. never told her sister, J.A. that Burden was touching her inappropriately.

{¶9} When S.C. was 16, she was questioned by school employees regarding the alleged incidents. After talking with the school officials, S.C. stated that Burden called her and asked why she would not lie for him.

{¶10} On cross-examination, S.C. stated that she was interviewed in 1999 by a social worker regarding the alleged abuse. She admitted that she never claimed penetration when she was interviewed in 1999. She admitted telling Detective Coleman "If I don't win, I will still look like a liar."

{¶11} B. C., the mother of J. A. and S. C. testified that in 1999 S.C. asked to be picked up at school, and that she was told about the alleged abuse at that time. B.C.

stated that she listened in on a phone call between her daughter S.C. and Burden in 1999, and that Burden said to S.C. she could have lied for him.

**{¶12}** On cross-examination, B.C. stated that she told Detective Coleman that her first knowledge of the incidents came in 1999.

**{¶13}** J.N. the 36-year old niece of Burden, testified that she would visit Burden at his home when she was a child. At approximately age 15, she was placed at Next Step, which is a group home. Eventually the staff at the group home permitted J.N. to visit with Burden and Connie over holidays and weekends.

**{¶14}** J.N. spent the night on numerous occasions and had her own bedroom. Eventually Burden began coming into her bedroom at night, naked. He would get in bed with her and touch her breasts and outer vaginal area.

**{¶15}** In 2010, J.N. disclosed the abuse to Perry Township Police Detective Mindy Coleman when Coleman contacted J.N. during an investigation of Burden.

**{¶16}** B.D. testified as an "other acts" witness. B.D. is Burden's biological daughter. She lived with Burden and his first wife (also named Connie), who is her stepmother until she was 11 years old. While she lived there, she shared a room with her half-sister, A.G.

**{¶17}** Burden regularly came to the girls' room during the night. He would lie in between them, touch their breasts and genitals and ask if it felt good. He also asked them to touch his penis. On occasions when Burden was supposed to be disciplining B.D., he would tell her to pretend to cry while he rubbed her between her legs. He would do the same thing when he was supposed to be bathing B.D. BD told teachers and counselors about the abuse, but no one ever believed her reports.

{¶18} On cross, B.D. stated that she did not recall a trip to the emergency room in 1979 or a meeting with a counselor in 1981. She also admitted to borrowing money from Burden as an adult.

{¶19} Detective Mindy Coleman, of the Perry Township Police Department, testified that she investigated allegations of abuse by Burden against some individuals, including J.A. and S.C. This investigation revealed allegations of sexual abuse by Burden against J.A. and S.C.

{¶20} On cross-examination, Detective Coleman admitted that she used leading questions in her interviews with the alleged victims. She also admitted that she informed the victims that the case would be stronger if more people came forward. Coleman admitted she never attempted to contact Connie Porter, the investigator from 1999.

{¶21} Burden called as a witness Connie Porter formerly of the Stark County Child Protective Services. Porter testified that in 1999 she was involved in an investigation regarding S.C. Porter stated that during her investigation, S.C. denied any symptoms of child abuse. Porter stated that her investigation ended, yet no formal report or document was produced. On cross-examination, Porter stated that her notes indicated the victim's mother did not want to pursue prosecution in 1999.

{¶22} Connie Burden, Burden's wife, testified that she was the aunt of J.A. and S.C. Connie Burden stated that she never noticed any apprehension by the girls towards the Burden during their visits.

{¶23} After the evidence was concluded, the trial court dismissed one count of rape (Count 3) and one count of gross sexual imposition (Count 7).

**{¶24}** After deliberation, the jury returned verdicts of not guilty to the three counts of rape. However, the jury returned verdicts of guilty to five of the six counts of gross sexual imposition. Burden was then sentenced to nine (9) years in prison.

*Assignments of Error*

**{¶25}** Burden raises three assignment of error,

**{¶26}** "I. THE DEFENDANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE TRIAL COURT DENIED DEFENDANT'S MOTION TO DISMISS BASED ON PRE-INDICTMENT DELAY.

**{¶27}** "II. THE TRIAL COURT ERRED IN PERMITTING THE STATE TO PRESENT IMPERMISSIBLE "OTHER ACTS" EVIDENCE.

**{¶28}** "III. THE DEFENDANT'S CONVICTION FOR FIVE COUNTS OF GROSS SEXUAL IMPOSITION IN VIOLATION OF R.C. 2907.05 WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I.

**{¶29}** In his first assignment of error, Burden complains his case should have been dismissed based on pre-indictment delay. He argues he has suffered a due process violation because two witnesses — Phil Heagerty and Connie Porter — either had expressed doubt as to the allegations in the past or presently had no independent recollection of their involvement in the matter.

**{¶30}** The Sixth Amendment to the United States Constitution provides "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *." This provision is applicable to state courts through the Fourteenth Amendment.

*Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1(1967). The Ohio Constitution provides similar protection.

**{¶31}** As the second syllabus in *State v. Luck*, 15 Ohio St.3d 150, 153, 472 N.E.2d 1097(1984) states, "[a]n unjustified delay between the commission of an offense and a defendant's indictment therefore, which results in actual prejudice to the defendant, is a violation of the right to due process of law under Section 16, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendment to the United States Constitution." *Luck*, 15 Ohio St.3d at 154, 472 N.E.2d at 1102. *See also, United States v. Lovasco*, 431 U.S. 783, 789-790, 97 S.Ct. 2044, 52 L.Ed.2d 752(1977).

**{¶32}** Furthermore, any claim of prejudice, such as the death of a key witness, lost evidence, or faded memories, must be balanced against the other evidence in the case in order to determine whether the defendant will suffer actual prejudice at trial. *Luck, supra.*

**{¶33}** When a defendant asserts a pre-indictment delay violating his due process rights, prejudice may not be presumed. *United States v. Crouch,* 84 F.3d 1497, 1514-1515(5th Cir. 1996). The notion that prejudice may be presumed from a lengthy delay arises in the context of the four-part balancing test used in determining whether a post-indictment or post-accusation delay has deprived a defendant of his Sixth Amendment right to a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101(1972). The *Barker* four-part test, and the concept of presumptive prejudice, applies only to post-indictment or post-accusation delays that implicate the Sixth Amendment right to a speedy trial, and has no application to pre-indictment delays. *See, State v. Metz*, 4th Dist. No. 96 CA 48, 1998 WL 199944(Apr. 21, 1998) (Citation

omitted); *State v. Schraishuhn*, 5th Dist. No. 2010-CA-00635, 2011-Ohio-3805, ¶31; *State v. Harrell*, 5th Dist. No. 98CAA06029, 1999 WL 3887(Dec. 29, 1998).

{¶34} The Ohio Supreme Court held that a delay in the commencement of prosecution by the state would be found unjustified when it is done in an attempt to gain a tactical advantage over the defendant, or when the state "through negligence or error in judgment, effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased." *Luck,* 15 Ohio St.3d at 158, 472 N.E.2d 1097. The Court also held that the length of delay would normally be a key factor in this determination. Id.

{¶35} The defendant has the burden of demonstrating prejudice. *United States v. Lawson* 780 F.2d 535, 541-542(6th Cir. 1985). A lengthy delay in prosecuting the defendant, by itself, does not constitute actual prejudice. The defendant must demonstrate how the length of the delay has prejudiced his ability to have a fair trial. *United States v. Norris,* 501 F.Supp.2d 1092, 1096(S.D.Oh.2007). In *United States v. Wright,* 343 F.3d 849, 860(6th Cir. 2003), the Court held that loss of memory is insufficient to establish prejudice as a matter of law.

{¶36} In the case at bar, Burden claims that the following prejudice has resulted from the delay in the commencement of the prosecution: (1) memories of witnesses have undoubtedly faded; (2) unidentified witnesses are not available for trial. Burden argues that the foregoing factors, when viewed in light of the state's reason for the delay in prosecution of this case, warrants dismissal of the indictment on due process grounds.

{¶37} One potential witness, Phil Heagerty, interviewed some of the kids at the time of the allegations, and had written a letter expressing his doubt about the allegations. (T. Feb. 21, 2012 at 16-18). However, after being contacted by Burden's trial counsel, Heagerty stated that he had no personal recollection of the matter and that he had no admissible records from the time frame of the allegations. (Id. at 17).

{¶38} Additionally, Connie Porter testified at the hearing and stated that she had no independent recollection of the investigation in 1999 and could not explain why the case had not been prosecuted in 1999. (Id. at 24; 61).

{¶39} As the court stated in *State v. Glasper*, 2nd Dist. No. 15740, 1997 WL 71818 (Feb. 2, 1997), "The defendant will not satisfy his or her burden of proof by merely generally alleging the possible prejudice inherent in any delay, for example, that memories have faded, witnesses may be inaccessible, and evidence may be lost. The defendant must identify the specific prejudice suffered, and that prejudice must be substantial, for instance, that important taped witness inter-views were destroyed or that key witnesses have died."

{¶40} In *State v. Flickinger*, 4th Dist. No. 98CA09, 1999 WL 34854(Jan. 19, 1999) the court noted,

> A defendant must provide concrete proof that he will suffer actual prejudice at trial as a result of the government's delay in indicting the defendant. *See, e.g., Crouch*, 84 F.3d at 1515 (stating that vague assertions of faded memories are insufficient to establish actual prejudice; the defendant must state which witness is unable to fully recount the details of the crime and how the witness' lapsed memory will prejudice the

defense); *United States v. Beszborn* (C.A.5, 1994) 21 F.3d 62, 67, *certiorari denied sub nom, Westmoreland v. United States*, 513 U.S. 934, 115 S.Ct. 330, 130 L.Ed.2d 288 (stating that vague assertions of faded memories are insufficient to establish actual prejudice); *United States v. Stierwalt* (C.A.8, 1994), 16 F.3d 282, 285 (stating that assertions of faded memories are insufficient to establish actual prejudice when the defendant fails to specify how witness' lapsed memory will harm his defense); *United States v. Harrison* (S.D.N.Y.1991), 764 F.Supp. 29, 32 (stating that assertion of faded memories is insufficient to establish actual prejudice); *United States v. Greer* (D.Vt.1997), 956 F.Supp. 525, 528 (stating that a defendant must present concrete proof of actual prejudice and not mere speculation of actual prejudice).

*Flickinger*, ¶19; Accord, *State v. Jenkins,* 2009-CA-00150, 2010-Ohio-2719, ¶43.

**{¶41}** In the case sub judice, we believe that Burden's assertion that witnesses' memories have faded are much too speculative and fail to rise to the level of concrete proof.

**{¶42}** We find, therefore, that Burden has failed to establish that the delay in bringing the indictment caused Burden actual prejudice.

**{¶43}** Assuming, arguendo, that Burden had established the existence of actual prejudice, we believe that the state presented justifiable reasons for the delay that outweigh any prejudice Burden may have suffered. In the case at bar, nothing in the record suggests-and Burden does not argue-that the delay that occurred in the prosecution of this case was motivated by bad faith, harassment, or a governmental

desire to seek a tactical advantage. *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468. The lapse between the alleged incidents and the actual indictment was the result of investigative delay and the fact that the victims were minors whose parents did not wish to pursue the allegations.

{¶44} For the foregoing reasons, Burden's first assignment of error is overruled.

II

{¶45} In his second assignment of error, Burden argues that the trial court erred in permitting B.D. to testify as an "other acts" witness.

{¶46} In the case at bar, B.D. testified as an "other acts" witness. B.D. is Burden's biological daughter. She lived with Burden and his first wife until she was 11 years old. While she lived there, she shared a room with her half-sister.

{¶47} Burden regularly came to the girls' room during the night. He would lie in between them, touch their breasts and genitals and ask if it felt good. He also asked them to touch his penis. On occasions when Burden was supposed to be disciplining B.D., he would tell her to pretend to cry while he rubbed her between her legs. He would do the same thing when he was supposed to be bathing B.D. BD told teachers and counselors about the abuse, but no one ever believed her reports.

{¶48} On cross, B.D. stated that she did not recall a trip to the emergency room in 1979 or a meeting with a counselor in 1981. She also admitted to borrowing money from Burden as an adult.

{¶49} Initially, we note that the decision to admit or exclude relevant evidence is within the sound discretion of the trial court. *State v. Bey*, 85 Ohio St.3d 487, 490, 709 N.E.2d 484, 490(1999). The trial court's decision to admit or exclude relevant evidence

cannot be reversed absent an abuse of that discretion. See, e.g., *State v. Combs*, 62 Ohio St.3d 278, 581 N.E.2d 1071(1991); *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343(1987). The term "abuse of discretion" implies more than an error of law or judgment. Rather, the term suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715(1992); *State v. Montgomery*, 61 Ohio St.3d 410, 575 N.E.2d 167(1991). Furthermore, when applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. *In re Jane Doe 1*, 57 Ohio St.3d 135, 566 N.E.2d 1181(1991) (citing *Berk v. Matthews*, 53 Ohio St.3d 161, 359 N.E .2d 1301(1990)).

{¶50} In the case at bar, Burden was convicted of gross sexual imposition under R.C. 2907.05. The gross sexual imposition statute also contains so-called "rape shield" provisions,

(E) Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation

evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

(F) Prior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial.

{¶51} R.C. 2945.59 provides:

In any criminal case which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with prior or subsequent thereto, notwithstanding such proof may show or tend to show the commission of another crime by the defendant.

{¶52} Pursuant to the rape-shield statute, evidence of specific instances of a defendant's sexual activity is inadmissible "unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value." R.C. 2907.02(D).

{¶53} The rape-shield statutes were designed to prohibit evidence that is extremely inflammatory and prejudicial and only marginally probative. *State v. Gardner*, 59 Ohio St.2d 14, 17, 391 N.E.2d 337(1979).

{¶54} The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. See *State v. Curry*, 43 Ohio St.2d 66, 68,330 N.E.2d 720, 723(1975). This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature, as is certainly true in this case. *State v. Schaim,* 65 Ohio St.3d 51, 60, 1992-Ohio-31, 600 N.E.2d 661,669.

{¶55} The legislature has recognized the problems raised by the admission of other acts evidence in prosecutions for sexual offenses, and has carefully limited the circumstances in which evidence of the defendant's other sexual activity is admissible. The rape statute and the gross sexual imposition statute both contain subsections that address the admissibility of evidence of other sexual activity by either the victim or the defendant. *Schaim,* 60 Ohio St.3d at 60, 600 N.E.2d 661. (Footnotes omitted). Because

of the severe social stigma attached to crimes of sexual assault and child molestation, evidence of these past acts poses a higher risk, overall, of influencing the jury to punish the defendant for the similar act rather than the charged act. Accordingly, the state may not "parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." *Huddleston v. United States*, 485 U.S. 681, 689, 108 S.Ct. 1496, 99 L.Ed.2d 771(1988).

**{¶56}** The Ohio Supreme Court has recently directed courts to conduct a three-step test to consider whether other-act evidence is admissible. *State v. Williams*, 2012-Ohio-5695, —— N.E. 2d ——(Dec. 6, 2012), ¶ 19. "The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Id. at ¶ 20 (citing Evid. R. 401). The second step is to "consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether [it] is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). Id. "The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." Id. (citing Evid. R. 403).

**{¶57}** In *Williams*, the defendant was accused of engaging in sexual relations with a fourteen-year-old boy he had mentored through his church. The Supreme Court held that evidence that the defendant had had a similar relationship with a different teenage boy he had coached on a swimming team twelve years earlier was admissible under Evidence Rule 404(B) "to show the plan of the accused and the intent for sexual gratification." Id. at ¶ 25. In *Williams,* the evidence indicated that the defendant had

targeted young, fatherless males "to gain their trust and confidence and groom them for sexual activity with the intent of sexual gratification." Id. Mr. Williams befriended the victim, often bought him gifts, and paid him to do odd jobs at Mr. Williams' house. The other-act evidence showed that Mr. Williams had "exhibited a pattern of isolating certain types of victims and then abused a position of authority to engage in grooming behaviors for the purpose of sexual gratification...." Id. at ¶ 11. Furthermore, part of Mr. Williams' defense was to claim that he was only sexually attracted to women. The Supreme Court overruled the Eighth District's en banc decision and held that the other-act evidence was admissible. Id. at ¶ 25. The Court held the other-act evidence tended to prove that Mr. Williams derived sexual gratification from engaging in sexual relations with teenage boys and that he had a certain plan or method of targeting a certain group of victims by gaining their trust through the role of an authority figure before abusing them. Id.[1]

{¶58} Evidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *State v. Carter*, 26 Ohio St.2d 79, 83, 269 N.E.2d 115, 117(1971); *State v. Lowe,* 69 Ohio St.3d 527, 530, 1994-Ohio-345, 634 N.E.2d 616, 619. (Citing *State v. Broom*, 40 Ohio St.3d 277, 282-283, 533 N.E.2d 682, 690-691(1988); Evid.R. 404(B); R.C. 2945.59). The Ohio Revised Code does not define "substantial proof."

{¶59} In *State v. Wright*, 4th Dist. No. 00 CA 39, 2001-Ohio-2473, the defendant asserted that substantial proof did not exist that he committed the other act because the

---

[1] Interestingly, the Court in *Williams* made no mention of the rape shield provisions of R.C. 2907.05(E).

uncorroborated testimony of sexual abuse by the other acts witness was the only evidence that the defendant committed the other act. The court determined that that the substantial proof requirement does not necessitate that independent evidence corroborate other acts testimony. Instead, the court found that the substantial proof requirement is satisfied if at least one witness who has direct knowledge of the other act can testify to the other act. The jury may then fulfill its duty and evaluate the witness's testimony and credibility.

**{¶60}** In *State v. Henderson*, 76 Ohio App.3d 290, 601 N.E.2d 596(1991), the court reached a contrary conclusion. In *Henderson*, the court determined that a victim's unsubstantiated and uncorroborated allegations of sexual abuse did not fulfill the substantial proof requirement. In *Henderson*, the defendant was convicted of gross sexual imposition with a specification that he purposely compelled the victim to submit by force or threat of force. To establish the element of force, the victim testified about a past episode of the defendant's sexual misconduct, which occurred seven or eight years prior to the trial.

**{¶61}** On appeal, the court held that the trial court should have excluded the other acts evidence. In addition to finding that the other acts occurred too remote in time, the court noted that uncorroborated and unsubstantiated evidence of this nature is fraught with danger and falls far short of substantial proof that appellant committed the prior act. *Henderson*, 76 Ohio App.3d at 295, 601 N.E.2d at 599-600.

**{¶62}** The Ohio Supreme Court initially agreed to resolve this conflict. *State v. Wright*, 94 Ohio St.3d 1504, 764 N.E.2d 1035(2002); however the Court later dismissed

the conflict without a decision as having been improvidently allowed. *State v. Wright*, 98 Ohio St.3d 1212, 785 N.E.2d 775(2003).

**{¶63}** In the case at bar, B.D. was unable to give any specific date that claimed her father abused her. The only time period B.D. was able to relate was generally between the time she was seven and eleven years old. That would be eight to twelve years prior to the earliest of the dates alleged in Burden's indictment.[2] She claimed that she reported the abuse to "teachers and counselors" B.D. did not remember denying the allegations in 1979; did not remember going to the hospital in 1979 and did not remember speaking to a counselor at the Crisis Center.

**{¶64}** The other acts evidence in the case at bar does not form part of the immediate background of the crime charged. The other acts admitted during Burden's case occurred at least eight years before the acts alleged in the indictment. Thus, the other acts are not inextricably related to the crime charged, and are chronologically and factually separate occurrences. We note the Ohio Supreme Court has limited its holding in *Curry* and has explained that, under Evidence Rule 404(B), "evidence of other crimes, wrongs, or acts of an accused may be admissible to prove intent or plan, even if the identity of an accused or the immediate background of a crime is not at issue." *State v. Williams*, 2012-Ohio-5695, —— N.E.2d ——, ¶ 2. However, we believe that temporarily proximity has a direct bearing on the relevancy and the potentially prejudicial nature of the evidence in a defendant's case.

**{¶65}** We would additionally note that the quality of the evidence concerning the allegations made by B.D. is lacking. As we have previously noted, in order for evidence

---

[2] Count 4 of the indictment puts the dates at July 25, 1988 to July 25, 1995; Count 8 of the indictment set the dates at July 25, 1988 to July 24, 1993. The other counts place the beginning date in 1990 or 1993.

of a prior act to be admissible, there must be substantial evidence that the accused committed the act. *State v. Carter*, 26 Ohio St.2d 79, 269 N.E.2d 115(1971). In the case *sub judice,* B.D. recanted the allegations at the time. Moreover, no other witness testified at the trial about the prior incident or that B.D. had reported the allegations at the time. Further, no specific dates of the alleged incidents were provided by B.D**.** Uncorroborated and unsubstantiated evidence of this nature is fraught with danger and falls far short of substantial proof that Burden committed the prior act. As a result, the use of questionable evidence about Burden's past sexual misconduct to prove an element of an unrelated charge was not permissible. Burden was left with absolutely no means of answering these allegations. *State v. Henderson*, 76 Ohio App.3d 290, 601 N.E.2d 596(1991); *State v. Strober*, 51 Ohio App.3d 31, 554 N.E.2d 916(1988); *State v. Miley,* 5th Dist. Nos. 2005 CA 67, 2006 CA 14, 2006-Ohio-4670, ¶75. Thus, the question we must address now is whether the admission of the other acts testimony was harmless.

{¶66} In making a Crim.R. 52(A) harmless error analysis, any error will be deemed harmless if it did not affect the accused's "substantial rights." Otherwise stated, the accused has a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error. Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705(1967). Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Lytle* (1976), 48 Ohio St.2d 391,495, 358 N.E.2d 623, paragraph three of the syllabus, *vacated on other*

*grounds in* (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154. There must be other overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction. *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284(1969); *State v. Ferguson*, 5 Ohio St.3d 160, 166, 450 N.E.2d 265(1983), n. 5.

**{¶67}** In the case at bar, the jury was given a limiting instruction. "A presumption always exists that the jury has followed the instructions given to it by the trial court," *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313(1990), at paragraph four of the syllabus, rehearing denied, 54 Ohio St.3d 716, 562 N.E.2d 163, approving and following *State v. Fox*, 133 Ohio St. 154, 12 N.E.2d 413(1938); *Browning v. State*, 120 Ohio St. 62, 165 N.E. 566(1929). Further, the jury found Burden not guilty of the three most serious charges.

**{¶68}** Even though the admission of the prior acts was erroneous, we would conclude, from a review of the entire record, that such error would be "harmless beyond a reasonable doubt." *Chapman v. California; Harrington v. California*, 395 U.S. 250, 89 S .Ct. 1726, 23 L.Ed.2d 284(1969); *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340(1972); *State v. Lindsay,* 5th Dist. No. 2010-CA-0134, 2011-Ohio-4747, ¶75.

**{¶69}** Burden's second assignment of error is overruled.

III.

**{¶70}** In his third assignment of error, Burden contends that his convictions are against the manifest weight and sufficiency of the evidence. Specifically, he argues the

witnesses were not credible, too much time had elapsed before prosecution and the state produced no physical evidence.

**{¶71}** Burden was convicted of five counts of gross sexual imposition involving three girls, pursuant to R.C. 2907.05.

**{¶72}** The indictment in the case at bar charged Burden with a violation of R.C. 2907.05(A)(1) and/or (A)(4), which states,

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

> (1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.

* * *

> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

R.C. 2907.01(B) defines "sexual conduct" as,

> (B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

**{¶73}** Counts five and six involve S.C. There is no dispute that she was under 13 years of age at the time of the occurrences. S.C. testifed that she recalled Burden sitting

on the couch with her, first rubbing her back and then putting his hand inside her underwear and fondling her vaginal area. He also masturbated in front of her. She further recalled waking up numerous times to Burden naked in her bed and rubbing her genitals. She would stay as quiet as she could until it was over, because she was scared.

{¶74} Counts eight and nine concerned J.A., Burden was convicted of one count of having sexual contact with J.A. when she was less than 13 years of age and one count of having sexual contact with J.A. by purposely compelling her to submit by force or threat of force. J.A. testified that the touching began when she was seven or eight and continued until she was about 16. She testified she would wake up at night screaming "no" because Burden was touching her while she slept in his bed. He also touched her vaginal area when they were both seated on the sofa. Burden was in charge when J.A. visited and he made J.A. nervous and afraid.

{¶75} Finally, Burden was convicted of having sexual contact with J.N., between 1990 and 1993, by purposely compelling her to submit by force or threat of force.

{¶76} J.N. testified she was born in 1975 and went to stay in the group home where Burden found her when she was 15 years old. When she began spending time in Burden's home, Burden began creeping into her room at night, naked, getting in bed with her and trying to kiss her while touching her breasts and putting his hands inside her pajama bottoms and rubbing her vaginal area. J.N. would move her head to prevent Burden from kissing her. J.N. felt her only two choices were staying in the group home or putting up with Burden's behavior.

**{¶77}** In the case at bar, the trial court dismissed one count of rape (Count 3) and one count of gross sexual imposition (Count 7). The jury found Burden not guilty of three counts of rape.

**{¶78}** Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found the essential elements of the crimes of gross sexual imposition We hold, therefore, that the state met its burden of production regarding each element of the crimes of gross sexual imposition and, accordingly, there was sufficient evidence to support Burden's convictions.

**{¶79}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. No. 07 MA 198, 2008–Ohio–6635, ¶ 31, *quoting State v. Woullard,* 158 Ohio App.3d 31, 2004–Ohio–3395, 813 N.E.2d 964, ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore* (1999), 131 Ohio App.3d 197, 201, 722 N.E.2d 125. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter,* 131 Ohio St.3d 67, 2011–Ohio–6524, 960 N.E.2d 955, ¶ 118. *Accord, Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶80}** The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. 99AP-739, 2000 WL 297252(Mar 23, 2000) citing *State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, 10th Dist. No. 02AP-604, 2003- Ohio-958, 2003 WL 723225, ¶ 21, citing State v. Antill, 176 Ohio St. 61, 67, 197 N.E.2d 548(1964); *State v. Burke*, 10th Dist. No. 02AP-1238, 2003-Ohio-2889, 2003 WL 21291042, citing *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096( 4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), superseded by State constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668(1997).

**{¶81}** After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury did not create a manifest injustice by concluding that appellant was guilty of the crimes charged in the indictment. The jury heard the witnesses, evaluated the evidence, and was convinced of Burden's guilt.

**{¶82}** Burden's third assignment of error is overruled.

**{¶83}** For the foregoing reasons, the judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, P.J.

Farmer, J., and

Delaney, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. SHEILA G. FARMER

_____

HON. PATRICIA A. DELANEY

WSG:clw 0322

[Cite as *State v. Burden*, 2013-Ohio-1628.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                            :
                                         :
                    Plaintiff-Appellee   :
                                         :
                                         :
                                         :
-vs-                                     :         JUDGMENT ENTRY
                                         :
BERT S. BURDEN                           :
                                         :
                                         :
                    Defendant-Appellant  :         CASE NO. 2012-CA-00074


     For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Stark County Court of Common Pleas is affirmed.  Costs to appellant.


                                         _____
                                         HON. W. SCOTT GWIN


                                         _____
                                         HON. SHEILA G. FARMER


                                         _____
                                         HON. PATRICIA A. DELANEY