The STATE of Ohio, Appellee,

v.

LEE, Appellant.

[Cite as *State v. Lee,* 162 Ohio App.3d 648, 2005-Ohio-3395.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040540.

Decided July 1, 2005.

650

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Philip R. Cummings, for appellee.

Stephen J. Wenke, for appellant.

MARK P. PAINTER, Judge.

{¶ 1} Hearsay statements that are testimonial in nature should not have been admitted at trial. But because the evidence overwhelmingly demonstrated the defendant's guilt, the admission of those statements was harmless error. Defendant-appellant, Deshanta Lee, appeals her convictions and sentence for felonious assault and child endangering. We affirm.

## I. Conviction for Child Abuse

{¶ 2} Lee was indicted along with her boyfriend, Lawrence Ladson, for beating Ladson's five-year-old daughter, Samaria. One night in April 2004, Lee was in the bathroom with Samaria while Samaria was taking a bath. Lee took Samaria out of the bathtub to practice her ABCs. Each time Samaria would miss a letter, Lee would hit her on the hand with a hard comb. When Samaria became disobedient, Lee hit Samaria with her hand and an extension cord. Ladson also beat Samaria. The beatings resulted in serious injuries, including permanent marks.

{¶ 3} The next morning, Lee called Tia Higgins and asked whether she could watch Samaria. Lee told Higgins that Samaria had some bruises because Samaria had been jumping out of the bathtub and hitting her head and that Lee and Ladson had "whooped her." Higgins had never met Samaria. When Lee

dropped off Samaria, Higgins saw that the bruises were extensive and noticed that Samaria was having trouble walking. Higgins noticed a scar on Samaria's chest and took Samaria's shirt off to get a closer look. Samaria's body was bruised all over. When Higgins asked Samaria who had done that to her, Samaria said, "Daddy and Dee–Dee [Lee] did it."

{¶ 4} Higgins called her father, who looked at Samaria and then called the police. Officer Patricia Hoffbauer arrived first and asked Higgins and Samaria some questions. Samaria told Officer Hoffbauer that Ladson and Lee had beaten her. Another officer took Samaria to the hospital for treatment. Doctor Robert Shapiro treated Samaria, and Regan Thaler, a social worker, interviewed her. Samaria told Thaler that she had been beaten with an extension cord, a comb, and a belt.

{¶ 5} Detective Charlene Morton investigated the case and interviewed Lee. During this interview, which was taped, Lee admitted disciplining Samaria with the comb, her hand, and an extension cord. But Lee said that she had not caused the extensive injuries that Samaria had received. Instead, Lee blamed those injuries on Ladson. Detective Morton also recorded an interview with Ladson, who admitted beating Samaria extensively. Ladson also said that Lee had hit Samaria and had been in the bathroom alone with her, so he could not say exactly what Lee had done to Samaria.

{¶ 6} At trial, Higgins, Officer Hoffbauer, Thaler, Detective Morton, Doctor Shapiro, and several other witnesses testified for the state. Higgins and Officer Hoffbauer repeated Samaria's statements that Ladson and Lee had caused the injuries. And Thaler said that Samaria had told her that the beating had occurred at Ladson's house and that two people had done it. Ladson did not testify because he had stated that he would only assert his Fifth Amendment right not to incriminate himself, but his taped interview was played for the jury. Samaria did not testify because the court held a hearing during which Samaria refused to speak to the court, saying, "I don't want to," admitted being nervous, and responded negatively when asked if she wanted to talk about the incident. The state introduced photographs of Samaria's wounds, Detective Morton's taped interview with Lee (and a transcript of it), the actual items used to beat Samaria, and several other exhibits. Lee testified on her own behalf and called Detective Morton back to testify about her interviews with Lee and Ladson.

{¶ 7} The jury found Lee guilty on both counts, and the trial court sentenced Lee to two seven-year terms of imprisonment, to be served concurrently. Ladson pleaded guilty. On appeal, Lee assigns six errors: (1) the trial court should not have admitted Samaria's hearsay statements because they violated the Confrontation Clause of the Sixth Amendment to the United States Constitution and (2) because Evid.R. 807 prohibited them, (3) Lee received ineffective assis-

tance of counsel, (4) and (5) the convictions were against the sufficiency and the manifest weight of the evidence, and (6) Lee's sentence was contrary to law because she received more than the minimum sentence.

## II. Confrontation and Crawford

{¶ 8} In her first assignment, Lee argues that the trial court erred by allowing numerous hearsay statements into evidence in violation of her Sixth Amendment rights.

{¶ 9} In *Crawford v. Washington*,[1] the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment bars the admission of testimonial hearsay unless the declarant is unavailable and the accused has had a prior opportunity to cross-examine her. The court limited its holding to testimonial hearsay, including prior testimony at a preliminary hearing and other court proceedings, confessions, and responses made during police interrogations.[2]

{¶ 10} Lee now complains that three witnesses testified concerning Samaria's hearsay statements: Higgins, Officer Hoffbauer, and Thaler. Higgins testified to what happened after she saw Samaria's injuries: "I grabbed her and I started crying. I asked her who did it. She said daddy and Dee Dee [Lee]." Lees trial counsel did not object to this testimony, so we review it under a plain-error analysis—that is, we may notice unobjected-to errors only if they affected substantial rights.[3]

{¶ 11} And violations of the Confrontation Clause are subject to harmless-error review.[4] *Crawford* did not change this.[5] Any error that does not affect the substantial rights of the accused is harmless error and may be disregarded.[6]

{¶ 12} An accused's right to confront the witnesses against her is a substantial right. But the other evidence in this case convincingly showed that Lee was guilty. The admission of Samaria's statements through Higgins's testimony was harmless.

---

1. (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177.

2. Id. at 51–52, 124 S.Ct. 1354, 158 L.Ed.2d 177.

3. See Crim.R. 52(B).

4. See *United States v. McClain* (C.A.2, 2004), 377 F.3d 219.

5. Id.

6. See Crim.R. 52(A).

{¶ 13} Officer Hoffbauer also testified that Samaria identified Lee as one of her attackers. Lee's trial counsel objected several times, and the trial court sustained the objection before the state had laid a foundation to prove that Samaria's statement was an excited utterance. *Crawford* specifically proscribes the admission of statements made as a result of a police interrogation. Excited utterances are generally admissible as an exception to the hearsay rule.[7] But it appears that Samaria told Officer Hoffbauer that Lee was one of her attackers only in response to a question about how she had been injured—this was not an excited utterance. Had Samaria been crying and yelling that Lee and Ladson had beaten her, perhaps the excited-utterance exception would have applied.

{¶ 14} In *White v. Illinois*,[8] the Supreme Court held that hearsay is admissible without a Confrontation Clause problem as long as the hearsay has a sufficient guarantee of reliability. The state now argues that *White* unequivocally allowed Samaria's statements to be admitted. But *Crawford* seems to have changed the rules concerning testimonial hearsay, even though it did not specifically overrule *White*. And Samaria's statements to Officer Hoffbauer were certainly testimonial in nature: they were the direct result of his questioning.

{¶ 15} The same holds true for Thaler's testimony. While Samaria did not specifically identify Lee as the attacker, Thaler testified, Samaria had told her that the attack happened at Ladson's house and that two people had caused the injuries. There was no testimony about any other people at the house; even though it was a broader statement, its implication was obvious.

{¶ 16} But as with Higgins's testimony, the admission of these statements was harmless because the rest of the evidence clearly showed that Lee had committed the crimes. We therefore overrule Lee's first assignment of error.

### III. Evid.R. 807

{¶ 17} In her second assignment, Lee argues that the trial court erred by admitting hearsay evidence in violation of Evid.R. 807.

{¶ 18} A child's out-of-court statement describing any act of physical violence committed against the child is not excluded as hearsay under certain circumstances.[9] The state must (1) establish the unavailability of the witness, (2) provide written notice to the defense at least ten days before trial, (3) show a good-faith effort to obtain the child's testimony, (4) show that the testimony is not

---

7. See Evid.R. 803(2).

8. (1992), 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848.

9. See Evid.R. 807.

reasonably obtainable, and (5) demonstrate that the totality of the circumstances guarantee the trustworthiness of the statement.[10]

{¶ 19} The trial court held a hearing to determine whether Samaria could testify at trial. The record is clear that Samaria was mostly unresponsive and did not want to testify. The trial court noted that she was nervous, and Samaria shook her head negatively when asked whether she wanted to talk about the incident. This brief hearing was enough to establish that Samaria was not available to testify at trial. But it did not excuse the state from satisfying the other evidentiary requirements. The state did not meet its Evid.R. 807 burden.

{¶ 20} As we have already discussed with regard to the Confrontation Clause problems, the admission of the statements was harmless because the rest of the evidence unequivocally demonstrated Lee's guilt.

{¶ 21} We therefore overrule Lee's second assignment of error.

### IV.  Ineffective Assistance

{¶ 22} In her third assignment, Lee argues that she was denied the effective assistance of counsel when her trial counsel failed to object to the admission of inadmissible hearsay statements at trial.

{¶ 23} To establish ineffective assistance, a defendant must prove that (1) trial counsel's performance fell below an objective standard of reasonableness and (2) the substandard performance actually prejudiced the defendant.[11] We must indulge in a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance.[12] Trial counsel's performance will not be deemed ineffective unless there is a reasonable probability that but for counsel's errors, the result of the trial would have been different.[13]

{¶ 24} Lee's trial counsel failed to object to certain portions of Higgins's testimony. But her trial counsel did object when Officer Hoffbauer testified that Samaria had identified Lee and Ladson as her attackers. As we have already mentioned, the trial court sustained the objection initially, but allowed the statements to come in as excited utterances after the state had laid a foundation. And Lee's counsel also objected during Thaler's testimony; the trial court told Thaler not to mention any names.

---

10. Id.

11. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

12. Id.

13. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

{¶ 25} Lee now argues that her trial counsel should have specifically objected on the basis of noncompliance with Evid.R. 807. But we cannot say that the evidentiary problem was so obvious that failure to object on those specific grounds fell beneath an objective standard of reasonableness. And it is certainly not clear that but for counsel's so-called errors, the result of the trial would have been different—the evidence overwhelmingly demonstrated Lee's guilt.

{¶ 26} We therefore overrule Lee's third assignment of error.

## V. Sufficiency and Weight: Guilty Beyond a Reasonable Doubt

{¶ 27} In her fourth and fifth assignments of error, Lee argues that her convictions were against the sufficiency and the manifest weight of the evidence. But the evidence proved her to be guilty.

{¶ 28} In reviewing a record for sufficiency, we must determine whether any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt, when viewing the evidence in the light most favorable to the prosecution.[14]

{¶ 29} A review of the manifest weight of the evidence puts the appellate court in the role of a "thirteenth juror." [15] We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[16] "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." [17] And a new trial should be granted on the weight of the evidence only in exceptional cases.[18]

{¶ 30} The record clearly shows that Lee was guilty of the crimes. To prove felonious assault, the state had to demonstrate that Lee had knowingly caused serious physical harm to another or another's unborn.[19] A person acts knowingly when she is aware that her conduct "will probably cause a certain

14. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

15. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541.

16. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

17. Section 3(B)(3), Article IV, Ohio Constitution.

18. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 485 N.E.2d 717.

19. R.C. 2903.11(A)(1).

result or will probably be of a certain nature." [20]   And to prove child endangering as charged here, the state had to show that Lee administered corporal punishment or other physical disciplinary measures "in a cruel manner or for a prolonged period, which punishment * * * is excessive under the circumstances and creates a substantial risk of serious physical harm to the child." [21]   The child must be under 18 years old.[22]

{¶ 31} The record clearly demonstrates that Lee committed these crimes.  Lee admitted hitting Samaria multiple times with her hand, a comb, and an extension cord.  In fact, she testified that she hit her so often that she could not keep track of the exact number of times that she had hit her.  Lee also admitted why she hit Samaria—refusal to say her ABCs, disobedience, and jumping out of the tub.  In her recorded statement, Lee said that her hand was not working, so she used the extension cord.  In other words, Lee needed to hit Samaria harder to have an effect.  Lee also downplayed the seriousness of Samaria's injuries to Higgins.  Samaria identified Lee as one of her attackers.  And Dr. Shapiro testified that Samaria's injuries were among the worst he had seen in a child-abuse case.  All of this established Lee's guilt, even without Samaria's hearsay statements.

{¶ 32} Were the circumstances not so tragic, some of Lee's testimony would have been comical.  When asked why she took Samaria out of the bathtub, she replied, "I wouldn't whoop a child while they are in the tub.  That doesn't make any sense.  That's crazy."  Lee's actions were bizarre enough—it is no wonder that the trial court would later find that she showed no remorse.

{¶ 33} Lee contends that the state failed to demonstrate an intention to inflict serious physical harm on Samaria.  But "knowingly" is the standard; Lee had to realize that whipping a child with an extension cord so hard that it left permanent marks and hitting her to the point that she was bruised from head to toe would probably cause serious physical harm.

{¶ 34} Lee's basic defense was that she spanked the wrong child on the wrong day.  She argued (and continues to argue) that Ladson was clearly the only assailant.  But Detective Morton's interview with Ladson showed inconsistencies that only tended to prove Lee's guilt.  Ladson admitted to Detective Morton that he had caused the injuries above Samaria's waistline, even explaining some of the specific marks.  But he did not explain the wounds on Samaria's legs—the one area (along with the buttocks) where Lee admitted hitting Samaria.  Further, while Ladson claimed that he did not see Lee hit Samaria with the extension

**20.**  R.C. 2901.22(B).

**21.**  R.C. 2919.22(B)(3).

**22.**  Id.

cord, he admitted that Lee was alone in the bathroom with Samaria at some point. Ladson even stated, "If she said she [hit her with the cord], then she did." And Lee admitted that she hit Samaria with the cord.

{¶ 35} Lee states in her brief, "[T]here was absolutely no evidence of participation in the crime, but rather mere association with the principal offender." This argument is disingenuous at best. Not only was there overwhelming evidence that Lee committed the crimes, but she now attempts to hide behind Ladson—who was equally guilty, but willing to admit his crimes.

{¶ 36} Viewing the evidence in the light most favorable to the state, reasonable minds could have found Lee guilty of both crimes. And we cannot say that the jury lost its way or created a manifest miscarriage of justice in finding her guilty. We therefore overrule Lee's fourth and fifth assignments of error.

## VI. Sentencing

{¶ 37} In her sixth and final assignment, Lee argues that her sentence was contrary to law because she received seven-year sentences when two-year sentences were the only terms the trial court could have imposed without making additional findings of fact.

{¶ 38} We have already held that *Blakely v. Washington* [23] and *United States v. Booker* [24] support arguments like Lee's.[25] Because Lee did not have any prior prison terms, the trial court had to impose the shortest prison term. Because both crimes were second-degree felonies, the trial court should have sentenced Lee to two years' imprisonment.[26]

{¶ 39} We must therefore remand the case for resentencing. The trial court's only option to increase Lee's prison time beyond the statutory minimum would be to make Lee's two-year sentences consecutive instead of concurrent. We believe the record would support the findings necessary to impose consecutive sentences.

{¶ 40} We therefore sustain Lee's sixth assignment of error and affirm the trial court's judgment in part, reverse it in part, and remand for resentencing.

Judgment affirmed in part
and reversed in part,
and case remanded.

DOAN, P.J., and HILDEBRANDT, J., concur.

---

23. (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.

24. (2005), 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621.

25. See *State v. Montgomery,* 159 Ohio App.3d 752, 2005-Ohio-1018, 825 N.E.2d 250.

26. See R.C. 2929.14(A)(2).