[Cite as *State v. Doby*, 2014-Ohio-2471.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2013-05-084 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 6/9/2014 |
| - vs - | | |
| | : | |
| MYRON LAMAR DOBY, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2013-01-0001


Michael T. Gmoser, Butler County Prosecuting Attorney, Michael A. Oster, Jr., Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Repper, Pagan, Cook, Ltd., Christopher J. Pagan, 1501 First Avenue, Middletown, Ohio 45044, for defendant-appellant


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Myron Doby, appeals his convictions in the Butler County Court of Common Pleas for two counts of murder and two counts of having weapons while under disability. For the reasons stated below, we affirm the decision of the trial court.

{¶ 2} In the early morning hours of December 28, 2012, Doby shot and killed Donnell Holland in the parking lot of the Grub Pub, a bar located in Hamilton, Ohio. Earlier that night, Doby and Holland had fought at Elks Pure Gold Lounge (Elks). Holland was working as

security at Elks and intervened and fought Doby when Doby pushed a customer to the floor. Several hours after the fight at Elks, both men were at the Grub Pub. A second altercation ensued between the men in the Grub Pub's parking lot. Ultimately, Doby obtained a gun and shot Holland several times. Holland died as a result of the gunshot injuries.

{¶ 3} On January 8, 2013, Doby was indicted for one count of murder in violation of R.C. 2903.02(A) as well as one count of felony murder in violation of R.C. 2903.02(B). Both charges had gun specifications pursuant to R.C. 2941.145. Doby was also indicted for two counts of having weapons while under disability in violation of R.C. 2923.13(A)(2) and (A)(3). Doby pled guilty to the two counts of having weapons while under disability. On April 22, 2013, a jury trial was held regarding the two remaining murder counts.

{¶ 4} At trial, Charlene Smiley testified that she was present for both fights between Doby and Holland. She explained that at Elks, Holland fought Doby after Doby pushed a female patron to the floor. Eventually, the fight was broken up and Doby left the bar. Smiley stayed at Elks until it closed and then left the bar with Holland and Guy Watson. The trio decided to go to the Grub Pub because Smiley wanted a "Jagerbomb." Holland drove Smiley and Watson to the Grub Pub. During the drive to the bar, there was no discussion about Holland's fight with Doby.

{¶ 5} Doby was present at the Grub Pub when Holland and his companions arrived. Holland parked his car next to Doby's vehicle. Inside the bar, Smiley ordered a drink and eventually Holland came up to her and told her that they should leave because Doby is "on some other stuff." Smiley left the bar with Holland and Watson and began to walk to Holland's car to leave. Upon exiting the bar into its parking lot, Holland encountered Doby. She explained that Doby approached Holland with a sledgehammer in his hand. The two began to fight. Smiley was unsure if Holland took the sledgehammer from Doby during the fight. The fight was eventually broken up by people nearby. After the fight ended, Doby

obtained a gun and fired it at Holland. She stated that Holland was "running on the side of – like toward his car" and then Doby shot Holland.

{¶ 6} Watson was also at both bars during the fights between Doby and Holland. Watson explained that he knew Holland and Doby well; he worked with Holland at Elks and that Doby is "like my dad." Watson explained that at Elks, Holland tried to separate Doby from the female customer after Doby pushed her to the floor. Doby and Holland then engaged in a fight and Holland "got the better of the fight." Eventually, the fight was broken up and the police were called. Watson stayed at Elks until it closed and rode in Holland's vehicle to the Grub Pub. During the car ride, there was no discussion about Doby or that Doby's vehicle was in the Grub Pub parking lot.

{¶ 7} The trio arrived at the Grub Pub and stayed for a short time. While at the bar, Watson saw Doby and talked with him. Thereafter, Watson, Holland, and Smiley left the bar. As they were leaving, Holland and Doby began to fight in the parking lot. Watson testified that Doby had something in his hands and swung it at Holland, though Watson was unable to identify the object. The pair ended up on the ground and Holland got the item from Doby. While Watson did not identify the item at trial, he acknowledged that in a police report he stated the object was a sledgehammer. Watson explained that Holland was on top of Doby, "kicking the crap out of him." Watson and others broke up the fight and a truck pulled into the parking lot. The next thing Watson saw was Doby with a gun walking towards Holland. Holland backed away from Doby, put his hands in the air, and pled with Doby not to shoot him. Doby shot Holland, causing him to fall to the ground. Doby then walked up to Holland and fired off more shots.

{¶ 8} Other witnesses also testified at trial. Wyman Carr, Doby's cousin, explained that he spoke to Doby after the first altercation at Elks. He stated Doby was upset about the fight and had a "busted mouth, mouth swollen, a couple teeth missing." Doby twice told Carr

that "he was going to kill" Holland. Carr responded by telling him not to kill him. After speaking with Doby, Carr went to Holland and warned him about what Doby said and told him to go home and give Doby "time to cool off." The morning after the incident, Carr learned that Holland had been killed. Carr texted Doby, "I told you not to do that."

{¶ 9} City of Hamilton Police Officer Chris Gibson testified that he responded to the fight at Elks between Doby and Holland. Officer Gibson spoke with Doby who denied that he was in a fight. Gibson then went into Elks and assisted Holland in escorting an intoxicated woman outside of the bar. During this, Holland asked for a protection order because he did not want Doby to come back and shoot him.

{¶ 10} City of Hamilton Detective Patrick Erb testified that in his investigation of the case he obtained a video which shows the CVS parking lot near the Grub Pub at the time of the incident. The video shows a man with "a long object in his hand that has a larger end of it, but it's a – looks very similar to a sledgehammer." Neither the sledgehammer nor the firearm used in the shooting were recovered by police.

{¶ 11} Lastly, Dr. James Swinehart, a forensic pathologist and a deputy coroner in Butler County explained that he performed the autopsy of Holland. He stated that Holland was 6'2" and weighed 359 pounds. In examining Holland's body, Dr. Swinehart found seven gunshot wounds. Six wounds were to the lower extremities and one was to the face. Dr. Swinehart testified that the wound to the face went up to down and right to left and was "immediately lethal." There were also four wounds to the lower left leg and two to the right leg. The leg wounds were in a left to right, down to up trajectory. Additionally, the wounds to the right leg were in Holland's right thigh and could have come from the bullets that exited the left leg. The doctor testified that all the wounds were from bullets fired at long range, meaning more than two to three feet away. He stated that the wounds in his leg would have knocked Holland down, rendering him unable to walk.

- 4 -

{¶ 12} During trial, the court denied Doby's request to instruct the jury regarding voluntary manslaughter. The court reasoned that the evidence did not establish that Doby was provoked by Holland and therefore a voluntary manslaughter jury instruction was inappropriate. Additionally, during closing argument the court overruled Doby's objection to the prosecutor's statement to the jury to "not let Doby walk out that door." However, later the court instructed the jury to disregard this comment.

{¶ 13} At the conclusion of trial, the jury found Doby guilty of two counts of murder. Doby was sentenced to an aggregate term of life imprisonment with the possibility of parole after 21 years. Doby now appeals, asserting three assignments of error.

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY ON VOLUNTARY MANSLAUGHTER AS AN INFERIOR OFFENSE.

{¶ 16} Doby argues that the court erred when it refused to instruct the jury on voluntary manslaughter as an inferior offense to murder. Specifically, Doby challenges the court's focus on the identity of the aggressor of the fight and Doby's "opportunity to avoid the affray" in reasoning that a voluntary manslaughter instruction was inappropriate. Instead, the court should have considered the other circumstances of the fights, such as that Holland is twice Doby's size, Holland severely beat up Doby, the trajectory of the shots suggest that Doby was on the ground when he fired the gun, and the fights were humiliating as they occurred in a public place.

{¶ 17} Jury instructions are matters left to the sound discretion of the trial court. *State v. Harry*, 12th Dist. Butler No. CA2008-01-013, 2008-Ohio-6380, ¶ 35, citing *State v. Guster*, 66 Ohio St.2d 266, 271 (1981). This court, therefore, reviews the trial court's decision refusing to provide the jury with a requested jury instruction for an abuse of discretion. *State v. Gray*, 12th Dist. Butler No. CA2010-03-064, 2011-Ohio-666, ¶ 23, citing *State v. Wolons*,

44 Ohio St.3d 64, 68 (1989). An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.

{¶ 18} Doby requested that the jury be instructed on voluntary manslaughter in violation of R.C. 2903.03(A). That statute provides that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another * * *." R.C. 2903.03(A).

{¶ 19} Voluntary manslaughter is an inferior degree of murder, for "its elements are * * * contained within the indicted offense, except for one or more additional mitigation elements * * *." *State v. Rice*, 12th Dist. Butler No. CA2003-01-015, 2004-Ohio-697, ¶ 31, quoting *State v. Shane*, 63 Ohio St.3d 630, 632 (1992). Even though voluntary manslaughter is not a lesser included offense of murder, the test for whether a judge should instruct a jury on voluntary manslaughter when a defendant is charged with murder is the same test to be applied when an instruction on a lesser included offense is sought. *Rice* at ¶ 31. A trial court should give a lesser included offense instruction "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *Id.* at ¶ 32, quoting *State v. Thomas*, 40 Ohio St.3d 213 (1988), paragraph two of the syllabus.

{¶ 20} Before giving a voluntary manslaughter instruction in a murder case, the trial court must apply an objective standard to determine "whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction." *Shane* at paragraph one of the syllabus. The provocation "must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *Id.* at 635. In determining whether the provocation was reasonably sufficient to incite the use of

deadly force, "the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." *Rice* at ¶ 36. If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case "actually was under the influence of sudden passion or in a sudden fit of rage." *State v. Jones*, 12th Dist. Butler No. CA2012-04-077, 2013-Ohio-654, ¶ 40.

{¶ 21} In denying Doby's voluntary manslaughter jury instruction, the court reasoned that a voluntary manslaughter instruction was inappropriate because "if there was provocation in this particular case, the provocation was actually occasioned not by the victim, but by the Defendant in this particular case." The court referenced the initial fight at Elks and reasoned that Doby started the fight by pushing a customer to the floor and that Holland acted in his employment capacity in fighting Doby. The court also found that Doby provoked the second fight because Doby approached Holland while brandishing a sledge hammer. After the fight was over Doby "had sufficient time to - to leave. And again, somehow he - he obtained a firearm, a - a .40 millimeter pistol in which he used it to cause the death of the victim in this particular case." Due to this evidence a jury could not reasonably conclude that the provocation was brought on by Holland.

{¶ 22} Doby claims that the court erred in focusing on the identity of the aggressor in denying the voluntary manslaughter jury instruction. In support of his position, Doby cites *State v. Linzy*, 5th Dist. Richland No. 2012-CA-33, 2013-Ohio-1129, where the court stated, "[u]nlike self-defense, the issue of who was the aggressor is not the determinative issue in a voluntary manslaughter defense; rather the appellant must show that he acted under a sudden rage or passion." *Id.* at ¶ 81.

{¶ 23} Despite Doby's assertions, the identity of the aggressor is relevant to determine the sufficiency of the provocation. *State v. Torres*, 3d Dist. Defiance No. 4-01-06, 2002 WL

418392 (Mar. 18, 2002). In *Torres*, the court looked to three Ohio Supreme Court cases where the court found that the defendant was not sufficiently provoked and therefore a lesser included offense instruction was not appropriate. *Id.* at \*5, citing *State v. Deem*, 40 Ohio St.3d 205 (1988); *Shane*, 63 Ohio St.3d 630; *State v. Mack*, 82 Ohio St.3d 198 (1998). In each of these cases "there was overwhelming evidence that the defendant brought the conflict to the victim and that the defendant was the aggressor." *Id.* Additionally, in the Supreme Court cases, "the victims attempted to get away from the defendant-appellant aggressor prior to their assault but were thwarted by the aggressor." *Id. See State v. Milling*, 9th Dist. Summit No. 24402, 2009-Ohio-3002, ¶ 10 (violence not occasioned by victim where victim's initial actions not sufficiently provocative and defendant started fight). Additionally, *Linzy* is not in contravention of these principles. In *Linzy*, the court did not go as far as to say that the identity of the aggressor is not a *relevant* issue in a voluntary manslaughter defense. Instead, the court merely stated it is not the *determinative* issue.

{¶ 24} Accordingly, in determining whether the jury should be instructed on a voluntary manslaughter offense, the trial court did not err in considering that Doby was the aggressor in the conflict. While the identity of the aggressor is not the determinative factor, neither is it an irrelevant factor in resolving whether the sudden rage or passion was "occasioned by the victim."

{¶ 25} Further, the facts deduced at trial negate the idea that Doby acted with sudden passion or in a fit of rage provoked by Holland. Doby argued with another patron at Elks and Holland, acting in his role as security at the bar, intervened and the two men got into a fight. Doby suffered injuries as a result of that fight. The evidence is undisputed that Doby initiated the argument with the other patron. While Doby attempts to argue that Holland went outside his role as security during the Elks fight, this is irrelevant to whether Doby was under a sudden fit of rage or passion for the second incident at the Grub Pub because Doby had

sufficient time to "cool off." *See Jones*, 2013-Ohio-654 at ¶ 44; *State v. Kanner*, 7th Dist. Monroe No. 04 MO 10, 2006-Ohio-3485, ¶ 28.

{¶ 26} The evidence also does not support Doby's assertion that he was acting under sudden passion or a fit of rage provoked by Holland during the second fight. Instead, the evidence showed that Doby approached Holland at the second bar, the Grub Pub, with an item, which was identified by some witnesses as a sledgehammer. The two engaged in a fight which was eventually broken up by people in the parking lot. Two witnesses testified that after the fight had ceased and Holland was withdrawing to leave, Doby obtained a gun and shot and killed him. Doby initiated the second fight and obtained a deadly weapon and shot and killed Holland after the fight had ended and Holland was withdrawing. Further, Doby's argument that he was in a fit of rage is contradicted by Carr's testimony that Doby informed him he intended to kill Holland after the first fight at Elks.

{¶ 27} When viewed in the light most favorable to Doby, the evidence establishes that Holland engaged in no conduct that would sufficiently provoke an ordinary person to use deadly force and Doby was not under the influence of a sudden passion to use deadly force. Accordingly, the trial court did not err in refusing to instruct the jury as to voluntary manslaughter. Doby's first assignment of error is overruled.

{¶ 28} Assignment of Error No. 2:

{¶ 29} THE TRIAL COURT ERRED BY ADMITTING THE VICTIM'S STATEMENT TO AN OFFICER.

{¶ 30} Doby challenges the court's admission into evidence of a statement made by Holland. At trial, Officer Gibson testified that while he was investigating the fight at Elks, Holland asked Gibson how he could obtain a protection order because he was afraid that Doby would "come back and shoot him." Doby argues that this statement was admitted in contravention of the Confrontation Clause and the hearsay rules and the admission of the

statement was prejudicial.

**Confrontation Clause**

{¶ 31} The Sixth Amendment to the United States Constitution preserves the right of a criminal defendant "to be confronted with the witnesses against him." Therefore, the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354 (2004). "The key issue is what constitutes a testimonial statement: 'It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.'" *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, ¶ 33, quoting *Davis v. Washington*, 547 U.S. 813, 821, 126 S.Ct. 2266 (2006). We review a claim that a criminal defendant's rights have been violated under the Confrontation Clause de novo. *State v. Bryant*, 12th Dist. Warren No. CA2007-02-0241, 2008-Ohio-3078, ¶ 48.

{¶ 32} The Supreme Court has not defined what constitutes a "testimonial" statement, but it has given examples of "formulations" for "testimonial statements": ex parte in-court testimony or its functional equivalent, extrajudicial statements contained in formalized testimonial materials (such as affidavits, depositions, prior testimony, or confessions), and statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, ¶ 60, citing *Crawford* at 51-52.

{¶ 33} The Supreme Court has given further guidance on the meaning of the term "testimonial" in *Davis*. In *Davis*, the Supreme Court held that the Confrontation Clause of the U.S. Constitution applies only to testimonial hearsay and not to statements made "to enable police assistance to meet an ongoing emergency." *Id.* at 828. Davis' victim had made a

- 10 -

"911" emergency telephone call, and in the course of that call incriminated Davis. *Id.* at 817. The court reasoned that,

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later prosecution.

*Davis* at 822.

{¶ 34} Another factor to consider in determining whether statements are testimonial is the formality of the encounter. *State v. Clark*, 137 Ohio St.3d 346, 2013-Ohio-4731, ¶ 28. "Formality suggests the absence of an emergency and therefore an increased likelihood that the purpose of the interrogation is to 'establish or prove past events potentially relevant to later criminal prosecution.'" *Clark* at ¶ 28 quoting *Michigan v. Bryant*, __ U.S. __, 131 S.Ct. 1143, 1159 (2011). A police interrogation lacked formality where the situation was "fluid and somewhat confused" and the questioning "occurred in an exposed, public area, prior to the arrival of emergency medical services, and in a disorganized fashion." *Id.*, citing *Bryant* at 1160.

{¶ 35} In the case at bar, Officer Gibson testified that he was first responder to the fight at Elks. As Gibson approached the bar in his vehicle, his call screen stated that Doby was "being a problem." Gibson observed Doby standing on the street and asked him "who he was fighting with." Doby responded "no one." Gibson then approached Elks, knocked on the front door, and turned and observed Doby leaving the scene. Thereafter, Holland answered the front door and Gibson aided Holland in escorting an intoxicated patron out of the bar. While Gibson was assisting Holland, Holland told him that Doby had started a fight and Holland had to break it up. Gibson testified that the following conversation then took place:

- 11 -

[Prosecution]: When you were outside with Mr. Holland, what did you ask him?

[Gibson]: I didn't—he asked us if we knew who [Doby] was?

[P]: Okay.  What was your response?

[G]: Yes.

[P]: Did you ask him anything regarding the police report?

[G]: Yes I asked him if he needed a police report for a statement that was made to him.

[P]: Okay.  Then you asked him if he'd like to file a police report. What was his response?

[G]: No.

[P]: Okay.  Did he ask you anything else?

[G]: He asked about a protection order.

[P]: What did he say about the protection order?

[G]: He asked if he could get a protection order, because he did not want Mr. Doby to come back and shoot him.

[P]: What did you tell him?

[G]: I told him I could not give him a protection order, that he would have to petition the Court for that following Monday. Monday morning, he could come up here and try to get one that way.

{¶ 36} Officer Gibson's testimony regarding Holland's statement about obtaining a protection order was not testimonial and therefore its admission did not violate the Confrontation Clause.  The statement was made while there was an ongoing emergency. Gibson was the first responder to the scene where a fight had just occurred.  While Gibson had received information that Doby was causing problems, Doby denied being involved in the fight, and then left the scene.  Therefore, Gibson was still trying to assess the situation when he helped Holland remove an intoxicated customer from the bar.  Further, the statement was not made or collected in anticipation of a criminal proceeding.  In fact, Holland specifically

declined Officer Gibson's invitation to make a police report concerning the incident. Additionally, the circumstances surrounding Holland's statement were informal as the discussion transpired outside a bar. Therefore, the trial court did not err in admitting Holland's statement.

{¶ 37} Additionally, even if the statement was admitted in contravention of the Confrontation Clause, any error is harmless. The admission of a statement in violation of the Confrontation Clause is harmless if the reviewing court finds beyond a reasonable doubt that the error did not contribute to the verdict. *State v. Sims*, 12th Dist. Butler No. CA2007-11-300, 2009-Ohio-550, ¶ 16, citing *State v. Johnson*, 71 Ohio St.3d 332, 339 (1994). Error is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction. *State v. Burden*, 5th Dist. Stark No. 2012-CA-00074, 2013-Ohio-1628, ¶ 66, citing *State v. Lytle*, 48 Ohio St.2d 391,495 (1976), paragraph three of the syllabus, *vacated on other grounds*, 438 U.S. 910, 98 S.Ct. 3135 (1978). There must be other overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction. *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726 (1969); *State v. Ferguson*, 5 Ohio St.3d 160, 166 (1983), fn. 5.

{¶ 38} Doby argues that the state offered Holland's statement to prove Doby's purpose to kill and therefore its admission was prejudicial. Doby was charged with murder in violation of R.C. 2903.02(A) and (B). R.C. 2903.02(A) requires that the state prove that Doby specifically intended to kill Holland. Holland's statement is not probative as to Doby's intent to kill because it only relates to Holland's apprehension of Doby's possible actions. Additionally, there was overwhelming evidence as to Doby's purpose to kill Holland. Two eyewitnesses and experts testified at trial that Doby shot Holland and the evidence demonstrated that Holland was shot five to seven times. Further, Doby's friend, Carr, testified that after the first fight at Elks, Doby stated twice that he was "going to kill" Holland.

**{¶ 39}** We are also not persuaded by Doby's argument that the location and trajectory of the shots disclose that Doby's purpose in shooting Holland was to simply "injure or maim" and not kill. The fact that Doby shot Holland five to seven times is strong evidence of Doby's intent to kill. As this court has previously noted, "[w]hile use of a deadly weapon is not conclusive evidence of purpose to cause the death of another, such purpose may be inferred from the use of the weapon." *State v. Adams*, 12th Dist. Butler No. CA2009-11-293, 2011-Ohio-536, ¶ 21. Accordingly, even if the admission of Holland's statements through Officer Gibson's testimony was in error, any error was harmless beyond a reasonable doubt.

**Hearsay**

**{¶ 40}** Doby also argues that Holland's statement was hearsay and thus its admission was error. Doby argues that the court erred in determining that Holland's statement fell within the hearsay exception proscribed in Evid.R. 803(3), a statement of a declarant's then existing mental, emotional, or physical condition.

**{¶ 41}** According to Evid.R. 801(C), hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." However, Evid.R. 803(3) provides an exception, whether or not the declarant is available as a witness for:

> A Statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

**{¶ 42}** Where no objection is raised to the admission of alleged hearsay testimony, it may be considered by the trier of fact for whatever probative value it may have. *State v. Knodel*, 12th Dist. Butler No. CA2006-06-156, 2007-Ohio-4536, ¶ 13. Moreover, the failure to interpose a timely objection at a time when the trial court can correct an error constitutes a

waiver of any objection to the admissibility of evidence. *Id.* Nevertheless, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *Id.* at ¶ 15; Crim.R. 52(B). Thus, we review the admission of the alleged hearsay statement under the plain error standard of Crim.R. 52(B).

{¶ 43} Plain error consists of an obvious error or defect in the trial proceeding that affects a substantial right. Crim.R. 52(B). Plain error occurs only when, but for the error, the outcome of the trial clearly would have been different. *State v. Hill*, 92 Ohio St.3d 191, 203 (2001).

{¶ 44} At trial, defense counsel specifically waived any argument to the admission of the statement based on hearsay and chose to contest its admissibility solely upon the Confrontation Clause. We have previously found that the admission of Holland's statement was harmless beyond a reasonable doubt. Therefore, because the admission was harmless beyond a reasonable doubt, any possible error would also not rise to the level of plain error. *See State v. Lee*, 162 Ohio App.3d 648, 2005-Ohio-3395, ¶ 20 (1st Dist.); *State v. Kelley*, 2d Dist. Montgomery No. 2011 CA 37, 2012-Ohio-1095, ¶ 56-59.

{¶ 45} Consequently, we do not find any reversible error in the admission of Holland's statement. Doby's second assignment of error is overruled.

{¶ 46} Assignment of Error No. 3:

{¶ 47} DOBY WAS PREJUDICED BY THE PROSECUTOR'S MISCONDUCT DURING SUMMATION.

{¶ 48} Doby argues that the prosecutor engaged in prejudicial misconduct during closing arguments. Specifically, Doby maintains that the prosecutor's statement during closing argument: "Don't let him walk out of this courtroom" was improper as it misstated the law. Doby also argues that this statement was prejudicial because it invited the jury to disregard the law and evidence and speculate as to the consequences if Doby was acquitted.

**{¶ 49}** The state is entitled to a certain degree of latitude in making its concluding remarks. *State v. Layne*, 12th Dist. Clermont No. CA2009-07-043, 2010-Ohio-2308, ¶ 58. A court will find prosecutorial misconduct only when the remarks made during closing were improper and those improper remarks prejudicially affected substantial rights of the defendant. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62. "The focus of an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon the culpability of the prosecutor." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 57. Therefore, a finding of prosecutorial misconduct will not be grounds for reversal unless the defendant has been denied a fair trial because of the prosecutor's prejudicial remarks. *Layne* at ¶ 60.

**{¶ 50}** During closing arguments, the prosecution made the following statement:

> Look at all the evidence. Make the reasonable inferences the Judge will tell you you're allowed to; use your sense; use your logic and please find the Defendant guilty of murder. *Don't let him walk out of this courtroom.* Thank you.

(Emphasis added.)

**{¶ 51}** Defense counsel immediately objected to this statement, which was overruled by the trial court. Later, the court instructed the jury to disregard the prosecutor's statement. The court instructed the jury:

> I just wish to briefly instruct you that at the end of the Prosecutor's opening closing [sic] argument, he made some reference about don't let the Defendant walk out of here. I'm going to instruct you to disregard that comment. It was inappropriate and what happens after you reach a verdict is for the Court to determine. And your job is limited to finding the Defendant guilty or not guilty of what he is charged within the indictment as returned by the County Grand Jury. And—and what happens subsequent to that is the court's obligation. Your job is limited to whether or not he is guilty or not guilty of the two counts of the separately charged counts of murder. So you should disregard that comment.

**{¶ 52}** Viewing the prosecutor's comments in the context of the entire trial, Doby was

not denied a fair trial. While the prosecutor's comments might have suggested to the jury to consider punishment in its evaluation of the evidence, the prosecutor made this comment in the context of urging the jury to consider all the evidence. The prosecutor was merely reiterating his plea to the jury to convict Doby. Additionally, the court instructed the jury not to consider this statement and a jury is presumed to follow the trial court's instructions. *Gray*, 2012-Ohio-4769 at ¶ 62.

**{¶ 53}** Doby's third assignment of error is overruled.

**{¶ 54}** Judgment affirmed.

RINGLAND, P.J., and HENDRICKSON, J., concur.